392 A.2d 881

**COMMONWEALTH of Pennsylvania**

v.

**Robert ROMANOFF, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided Oct. 20, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken from judgment of sentence rendered following jury trial and verdict of guilty to charges of simple assault, involuntary deviate sexual intercourse, and rape.[1] Post-trial motions were filed and appellant's motions for arrest of judgment on the assault and rape charges were granted. Motions regarding Bill No. 4, the involuntary deviate sexual intercourse charge, were denied and the questions contained therein have been preserved for our consideration.

Viewed more favorably to the verdict winner, the facts are these. Complainant Linda DiFlavis, 26 years old, on June 4, 1975, at about 10:00 P.M., was awakened from sleep on the couch of her living room, the door of the residence having been left unlocked. She noticed that three men were standing over her, all of whom she knew to some degree. They told her that they wanted "to party", and refused her entreaties that they leave. Thereupon, complainant went to the kitchen and procured a steak knife, in hopes that brandishing the knife might scare off the three men. However, one of the intruders, viz., appellant's co-defendant below, removed the knife from complainant's possession, punched her in the nose with his fist, threatened her with death if she told the police of the incident, and pulled her upstairs to a bedroom. Appellant aided in the latter maneuver, while the third intruder remained downstairs with complainant's seven- and three-year old children.

---

1. "The Crimes Code", Act of 1972, Dec. 6, P.L. 1482, No. 334, 18 Pa.C.S. §§ 2701, 3123, and 3121 respectively.

Once upstairs, the two men ordered complainant to remove her clothes. While his co-defendant accomplished forced oral intercourse, appellant attempted sexual intercourse but did not achieve penetration. Thereupon the two men changed positions, appellant then engaging in oral intercourse. Shortly, upon hearing one of the children's crying, complaint called out for the third man, who had remained downstairs. When he arrived in the bedroom, the two there returned to the downstairs area, followed soon by the third man and complainant. The two had left the residence, but not without breaking glass and eggs about the kitchen, cutting the telephone connection, and leaving the kitchen otherwise is disarray. The steak knife which she had displayed earlier was bent in the shape of a ball. The incident was over by 1:00 A.M. of the following day.

That day, June 5, complainant sought medical treatment, which resulted in two physicians' consultations and examination at a clinic. An operation was recommended, which was performed some days thence. But the next day, June 6, after consultation with a friend, complainant reported the occurrence to the police. Initially hesitant in doing so, she testified at trial, because of the death threat, her fears were overcome by the friend's counsel. The information provided led to the prompt arrest, indictment, and trial of appellant, together with his co-defendant.

On June 6, the same day on which complainant reported to the police, an officer had gone to her home to take photographs of the premises and the injuries. One of these photos showed complainant's two black eyes and bruises about the nose, conditions commensurate with having been hit in that area. This picture the Commonwealth stated its intention to introduce at trial. An *in camera* proceeding was held to determine if this photo was so inflammatory as to prejudice the jury against the defendants below. Limiting itself solely to the issue of inflammatoriness of the photo, the lower court held that it was not of a prejudicial bent, depicting "a bruise under each eye, and from the angle, it would appear a little swelling of the nose." Introduction of the picture as evidence was allowed.

Appellant now argues that this picture had no evidentiary value and that it was error at trial to have allowed its introduction, or at the least to have failed to give a cautioning instruction when it was introduced. The law is well-settled that admission of this type of evidence is discretionary with the trial court. *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977). In this case, the evidentiary value of the photo was to support the contention that complainant had been assaulted and injured. A proper *in camera* review of the picture was held, and the subject photograph was held to be non-inflammatory, or one from which the normal person would not involuntarily recoil. We find that the lower court conducted the proper inquiry for determining that the evidentiary value of the photo outweighed any challenge to its inflammatory nature, which was found also to be nil, and that proper discretion was exercised. *Commonwealth v. Vogel,* 468 Pa. 438, 364 A.2d 274 (1976) and *Commonwealth v. Gonzales,* 463 Pa. 597, 345 A.2d 691 (1975). There was no error in the admission of the photograph.

At trial complainant's eight-year old son was called as a witness on behalf of the prosecution. Following is the bulk of the colloquy by court and counsel to determine the child's competency to testify:

Q. [By the court]: But let me ask you a question or two: Do you go to Sunday School?

A. Yes

Q. Good. What school do you go to?

A. St. Clemens.

Q. St. Clemens. Where is St. Clemens?

A. 71st and Elmwood Avenue.

Q. Let me ask you: Do you take classes in things like religion?

A. Yes.

Q. Catechism?

A. Yes.

Q. Well, let me ask: Do you know what a lie would be? Do you know what it is?

A. Yes.

Q. What is a lie?

A. It's a sin.

Q. It's a sin. That's right. So that if you were going to be asked some questions by people in this courtroom, you would know that if you were lying you would be sinning; is that correct?

A. Yes.

Q. And you wouldn't lie, would you?

A. No.

Q. What grade are you in?

A. The second.

Q. The second. And you therefore could know the difference between a lie and not; am I right?

A. Yes.

Then counsel for appellant objected to the colloquy, arguing that it had in no way established the witness' understanding of an oath. The court's position was that it had found that the child fully knew the necessity of telling the truth, and that it was unimportant to know, in addition to a truth-telling appreciation, what "oath" means. But the court did inquire further, in open court before the jury:

Q. Now, Benny, do you know what is meant by the word an oath, or the words? Do you know what that means?

A. No, your Honor.

Q. No? If a person told—do you know the difference between telling the truth and not telling the truth?

A. Yes.

Q. What is the truth as you understand it? What does it mean to you, the worth "truth"?

(PAUSE)

Q. Can I help you? It means not lying, right?

A. Yes. That's what I was going to say.

THE COURT: Thataboy. That's fine.

The witness was found qualified to testify.

Appellant alleges error as to this finding of competency. Based on the foregoing, we stand in agreement with the

trial court. "In establishing competency the court should inquire into three areas of testimonial capacity: capacity to observe the acts about which the infant is to testify; capacity to recollect what was observed; and, capacity to communicate what was observed, that is, the capacity to understand questions and frame intelligent answers, and the capacity to appreciate the moral responsibility to be truthful." *Commonwealth v. Mangello*, 250 Pa.Super. 202, 378 A.2d 897, 898 (1977), citing *II Wigmore on Evidence*, § 506 (3rd ed. 1940)). See also the seminal case in this jurisdiction, *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). We find that the court conducted a proper examination of the minor witness and found him able to tell truth from falsehood, to desire to tell the truth and to avoid falsehood, and to be able to understand and respond to questions. His mental capacities were reasonably inferred. The trial judge did not abuse his discretion in finding the witness competent. *Commonwealth v. Riley*, 458 Pa. 390, 326 A.2d 384 (1974).

■■ Further appellant argues that he was twice placed in jeopardy by having been indicted and tried for two offenses when the testimony against him supported only one act of sexual intercourse. He equates the crimes of rape and involuntary deviate sexual intercourse and claims that they are comprised of the same elements, insofar as they apply to instant facts. Appellant's argument is that the definitions of "deviate sexual intercourse" and "sexual intercourse" render the crimes of forcible rape and involuntary deviate sexual intercourse one and the same offense.[2] From this groundwork, he extrapolates to argue that what he did to the complainant was but one act, which should have been the subject of one indictment, trial, and conviction.

Although novel, appellant's argument misses the mark. He was not placed in double jeopardy because there was

2. "Crimes Code", *supra*, § 3101:
   "Deviate sexual intercourse." Sexual intercourse per os or per anus between human beings who are not husband and wife . . ..

   "Sexual intercourse." In addition to its ordinary meaning, includes intercourse per os or per anus . . . .

only one trial. He has not been indicted twice for the same offense because he was alleged to have committed upon the person of complainant two different acts: "involuntary deviate sexual intercourse" by placing his penis within her mouth, and "rape" by allegedly forcing his penis into the vagina. The proof of rape failed to establish penetration, and it was clearly correct for judgment to have been arrested as to the verdict of guilty of rape. We are not impressed by appellant's refusal to acknowledge that *deviate* sexual intercourse differs from sexual intercourse, as it is considered in its ordinary meaning, because of its aspect of deviateness. What may be an ambiguity in the definitions of actions made criminal will not cloud our applying common sense understanding to the facts. It was not error for appellant to have been indicted and tried for the instant two crimes, albeit that proof of the rape charge did not sustain conviction on that charge.

Next appellant alleges error below because the Commonwealth did not produce all the evidence it had against appellant. Such evidence is said to be the photographs taken by the police on June 6, the knife wielded by complainant, her telephone cord which had been cut, and her blood-stained clothes and bedclothes. As to the photographs, they were all made the subject of the *in camera* proceeding, *supra*, and were as available to defense as to prosecution. As to the other items, the fact of their existence was testified to; thus they were not evidentiary items kept from the knowledge of the defense. But at no point did appellant request them. Not having made the requests for these items at trial, he waived his rights in that regard and will not now be allowed to structure an argument on a refusal to have something done which was never requested.[3]

3. Counsel for appellant, in his closing argument to the jury, which has been transcribed, was allowed to tell the jury that it could infer that the reason why the Commonwealth failed to produce these physical items was that they did not exist. Both at trial and in his appellate brief, appellant apparently draws a parallel between the principle that a negative inference is permissible when the Commonwealth fails to produce a witness who might support defendant's

■ Lastly appellant argues that it was error below for the trial judge to have refused to give a charge regarding the failure of complainant promptly to complain to the police. Discretion was not abused by the lower court because we find that the report to the police was as prompt as reasonably possible. Complainant waited only long enough to get medical attention and to discuss the situation with a friend. Prompt prosecution is merely one element to be considered by the lower court in a case, and we find that it was not lacking in this case. See *Commonwealth v. Hornberger*, 199 Pa.Super. 174, 184 A.2d 276 (1962). Appellant was not entitled to the charge he requested.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

alibi or fails to explain his unavailability, and the alleged theory that physical evidence must be brought forth in a similar way, lest a negative inference be permitted. We find no precedent for the latter. See *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973).