426 A.2d 674

**COMMONWEALTH of Pennsylvania,**

v.

**Norman WOJCIECHOWSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1980.

Filed Feb. 20, 1981.

Petition for Allowance of Appeal Denied June 1, 1981.

1

2

Richard P. Haaz, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

WICKERSHAM, Judge:

On September 5, 1977, at about 1:00 a. m. a 24 year old woman was out for a walk a short distance from her home in the Juniata Park section of the city. Suddenly a van stopped in the street opposite from her and a man who emerged therefrom, grabbed her by the hair, threatened her and pulled her into the van. She was driven several blocks and then forcibly led into a park where she was brutally beaten and raped. She was able to escape naked sometime thereafter, contacted the police and made a positive identifi-

cation of the appellant, Norman Wojciechowski, who was seized nearby by the police when they alertly recognized the same van mentioned above.

The defendant-appellant came to trial, without a jury, February 1, 1978 before the Honorable Alfred J. DiBona, Jr. He was found guilty of rape, indecent assault, involuntary deviate sexual intercourse, aggravated assault and unlawful restraint. On April 19, 1978, post verdict motions were argued, denied, and the defendant was sentenced.

In this appeal, appellant raises five issues which we shall discuss seriatim.[1]

I.

## DID THE COURT ERR IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE OUT–OF–COURT IDENTI-FICATION?

Defendant contends that the victim's out-of-court identification of him, which immediately preceded his arrest, was the result of an impermissibly suggestive procedure and for that reason should have been excluded at trial. In support of this claim, defendant argues that, because the prompt identification did not occur exactly where these crimes took place, the circumstances became so suggestive that the possibility of misidentification perceptibly increased. This argument is without merit.

1.  Appellant frames his statement of questions involved thusly:
    II.   *STATEMENT OF THE QUESTIONS INVOLVED*
    1.   Did the court err in denying defendant's motion to suppress the out-of-court identification?
    (answered in the negative by the court below).
    2.   Did the court err in accepting defendant's waiver of a jury trial before the same judge who ruled on defendant's pretrial motions?
    (answered in the negative by the court below).
    3.   Did the court err by sentencing defendant to rape and indecent assault where the charges arose out of the same transaction?
    4.   Did the court err by sentencing defendant to rape and involuntary deviate sexual intercourse where the charges arose out of the same transaction?
    5.   Did the court err by sentencing defendant to rape and unlawful restraint where the charges arose out of the same transaction?

■ At trial, Ms. Patrick stated that the street lights were on when she first saw defendant's face. She also related the particulars of the description earlier testified to by Officer Rennier. As soon as she saw defendant approaching the police van, Ms. Patrick unequivocally identified defendant as her attacker "[b]ecause I recognized his face. I could never forget it" (N.T. 2–1–78, 139).

The lower court held that the victim's "identification of the defendant was made while the impression of her assailant was fresh in her mind", that the "confrontation on Kensington Avenue was in no way suggestive" that the "defendant was not handcuffed" and that the identification occurred "as soon as she saw" the defendant (N.T. 2–1–78, 97–98). This identification of defendant was made approximately 30 minutes after the crime was reported. Although it was not made at the specific location of the crime (the victim had fled from the situs of the last assault), it was made in the general area of the crime scene. Thus, it is clear that the procedure employed provided an opportunity for identification that was as prompt as could be under the circumstances. As the trial court recognized the identification procedure, and opportunity therefor, here resulted from very astute police work.

This case is therefore analogous to *Commonwealth v. Ray*, 455 Pa. 43, 315 A.2d 634 (1974), wherein the Supreme Court held that the identification made when the suspect was apprehended, fifty minutes after the crime and away from the crime scene, was not impermissibly suggestive merely because it was away from the crime scene. So too here, the identification procedure employed did not present elements of unfairness or suggestiveness and was clearly proper. *Cf. Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978).

## II.

DID THE COURT ERR IN ACCEPTING DEFEND-ANT'S WAIVER OF A JURY TRIAL BEFORE THE SAME JUDGE WHO RULED ON DEFENDANT'S PRE-TRIAL MOTIONS?

There is no merit to this contention. Judge DiBona conducted an exhaustive colloquy (N.T. 2/1/78, 100–114) explaining the consequences of the waiver of a jury trial before the same court who heard the suppression motions and of defendant's right to be tried before a judge or a judge and jury other than Judge DiBona. The Supreme Court of Pennsylvania has held that there are many instances, such as the instant case, where all parties are perfectly agreeable to the same judge presiding [at both the suppression hearing and trial] even where the trial is non-jury. *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973).

Appellant clearly agreed to have the non-jury trial proceed before Judge DiBona, and we find no error.

### III, IV, V.

DID THE COURT ERR BY SENTENCING DEFENDANT TO RAPE AND INDECENT ASSAULT WHERE THE CHARGES AROSE OUT OF THE SAME TRANSACTION?

DID THE COURT ERR BY SENTENCING DEFENDANT TO RAPE AND INVOLUNTARY DEVIATE SEXUAL INTERCOURSE WHERE THE CHARGES AROSE OUT OF THE SAME TRANSACTION?

DID THE COURT ERR BY SENTENCING DEFENDANT TO RAPE AND UNLAWFUL RESTRAINT WHERE THE CHARGES AROSE OUT OF THE SAME TRANSACTION?

Finally, defendant maintains that the lower court erred by imposing separate sentences for rape, indecent assault, involuntary deviate sexual intercourse and unlawful restraint. He claims that these crimes merge, contending that they arose out of a single criminal episode, and therefore that the separate sentences were unlawful. Contrary to defendant's contention, the evidence adduced at trial demonstrates that defendant engaged in separate and distinct criminal acts; as such the doctrine of merger is inapplicable.

At this point a summary of the facts is required. We have reviewed the trial transcript and we find that the District Attorney's Brief fairly covers the facts as follows:

"With respect to the convictions at issue, the evidence established the following. At approximately 1:00 A.M. on September 5, 1977, twenty-four year old Nancy Patrick was walking home through the Juniata Park Section of Philadelphia when she noticed a white van pull up across the street. The driver put his lights out but did not park the van; instead he pulled the van past her on the other side of the street, backed up, and then drove up toward her. She stepped into the street in order to cross the street away from the van. The driver, defendant, left his van and approached her, grabbing her by her hair and dragging her back to the van. After abducting her, defendant took an electrical cord from the rearview mirror and tied it around her left hand; he then ordered her to put her right hand behind her back, so that he could tie her up. When she refused, a struggle ensued and he finally pulled her upper torso onto his lap. He then punched the left side of her face three times. Once the victim was bound, with her hands behind her back, she could no longer struggle. Defendant kissed her and started the van, driving to a park in Philadelphia. Defendant led his bound victim out of the van and down into the park via a pathway. Although she was still tied up, she managed to free her hands. Ms. Patrick asked defendant if he had a knife, he said he did; but he never showed it to her. Defendant continued to lead her into the woods, chose a spot and told her to lie down. She dropped the cord and laid down. Defendant laid down next to her and took her head in his hands and forced her to take his penis into her mouth, preventing her from raising her head.

"After completing that act, defendant told her he would have to hit her; he then ordered her to lay with her legs out and with her hands behind her head. When she refused, another struggle ensued but she eventually surrendered to his wishes. While in that position, defendant struck her full force five times in the stomach and then twice in the face.

Defendant then ordered her to strip naked. She did so while he watched. He then laid on top of her and vaginally raped her. Then he again laid down, pushed her head down and forced her to commit fellatio. Next, defendant forced her to kneel down and put her face on the ground; defendant then got behind her and tried to put his penis into her rectum, but never penetrated the anus. Angered, defendant again forced her to lay down with outstretched legs and arms. He struck her repeatedly in the stomach and then forced her to kneel up so that he could again strike her in the face. When she fell to the ground defendant again forced her to take his penis into her mouth. At that time, the victim noticed that defendant's pants were down around his ankles. After the oral sex was finished, he pulled her down alongside of him and said that he would have to hit her again. While she was laying by his side, she pushed him, jumped up and ran. The only article of clothing remaining on her were her sneakers.

"The victim ran to a nearby house to seek help. Minutes later she met with Philadelphia police officers. Within ½ hour after she had escaped from defendant, she positively identified him (N.T. 2/1/78, 117–131)." [2]

The law which controls this type of situation is set forth in *Commonwealth v. Olsen,* 247 Pa.Super. 513, 372 A.2d 1207 (1977), remanded on other grounds, 487 Pa. 499, 410 A.2d 299 (1980). There the appellant was sentenced under the prior Penal Code for both indecent assault and assault with intent to ravish, based on separate acts by himself and a confederate against the complainant, and this court held that the sentences were in accordance with established law.

It is well established that for two crimes to merge, one must "necessarily involve" the other. *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920 (1941); *Commonwealth v. Dockins,* 230 Pa.Super. 271, 326 A.2d 505 (1971). It has oft been stated that in order for one crime necessarily to involve another, the essential elements of one must also be essential elements of the other. *Commonwealth v. Farmer,* 244 Pa.Super. 334, 368 A.2d 748

2. Quoted from District Attorney's Brief, pages 9, 10, 11 and 12.

(1976); *Commonwealth v. Ackerman*, 239 Pa.Super. 187, 361 A.2d 746 (1976); *Commonwealth v. Ruehling*, 232 Pa.Super. 378, 334 A.2d 702 (1975); *Commonwealth v. Dockins, supra.* A less mentioned and perhaps more obvious requirement is that the crime be part of the same transaction.

> "The true test of whether one criminal offense has merged into another . . . is whether one crime *necessarily involves* another, as for example, rape involves fornication, and robbery involves both assault and larceny. The 'same transaction' test is valid only when the 'transaction' means a *single act.* When the 'transaction' consists of two or more criminal acts, the fact that the two acts are 'successive' does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, . . . or they may be two distinct crimes which do not merge." *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104–05, 21 A.2d 920, 921 (1941) (emphasis in original). *See also Commonwealth v. Taylor*, 193 Pa.Super. 386, 165 A.2d 134 (1960); *Commonwealth ex rel. Sawchak v. Ashe*, 169 Pa.Super. 529, 83 A.2d 497 (1951), *cert. denied*, 343 U.S. 980, 72 S.Ct. 1080, 96 L.Ed. 1371 (1952).

> Thus, in order for two crimes to merge, they must be part of the same act. Without this requirement, that is, if the words "necessarily involve" did not include this idea, a defendant could never be sentenced for two counts of the same crime. "Separate and different acts of the same nature performed at different times generally constitute separate offenses." *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. at 106, 21 A.2d at 922, *quoting* 22 C.J.S. *Criminal Law* § 9. *See Commonwealth ex rel. Burge v. Ashe*, 168 Pa.Super. 271, 77 A.2d 725, *cert. denied*, 341 U.S. 928, 71 S.Ct. 795, 95 L.Ed. 1359 (1951).

*Id.* 247 Pa.Super. at 520–21, 372 A.2d at 1211.

In this case, defendant was prosecuted for separate and distinct sexual invasions of the person of Ms. Patrick, each of which was entirely complete unto itself, and thus

there is no merger. As said by our Supreme Court in a parallel context "[T]he legislative scheme [is] to protect all females from invasions of the person," *Commonwealth v. Walker*, 468 Pa. 323, 334, 362 A.2d 227, 232 (1976) (holding that sentences for rape, and statutory rape based on a *single* act of sexual intercourse were duplicitous, because there was only one invasion of the person of the victim). Here there were at least three sexual invasions, and three crimes; thus, three such sentences were proper.

This Court's decision in *Commonwealth v. Romanoff*, 258 Pa.Super. 452, 392 A.2d 881 (1978) sustains this conclusion. There, the appellant's claim was rejected that he was improperly charged with both rape and involuntary deviate sexual intercourse, during the same criminal episode, because of the overlapping definitions of the offenses. It was held that "[h]e has not been indicted twice for the same offense *because he was alleged to have committed upon the person of the complainant two different acts* : 'involuntary deviate sexual intercourse' by placing his penis in her mouth and 'rape' by allegedly forcing his penis into her vagina." *Id.*, 258 Pa.Super. at 460, 392 A.2d at 884.

■ Since the evidence presented supported all the convictions, defendant was appropriately and properly sentenced for each offense. It is unthinkable that a woman, once having been raped, is in the position where her attacker can then abuse her in any other fashion sexually, such as penetrating her anus or mouth with his penis, without incurring further sanctions for these separate and distinct crimes.

"Defendant cannot escape criminal liability merely because he chose to subject the victim to every possible kind of aggressive, physically abusive, sexual behavior in his depraved arsenal." [3]

As Judge DiBona stated in his Opinion denying post-trial motions:

In summary, this Court is satisfied that the combined weight and volume of the Commonwealth's evidence in

**3.** District Attorney's Brief, page 15.

this case fully supports the defendant's convictions. Likewise, this Court upon a careful review of the entire record in this case, finds no harmful, prejudicial or reversible error . . .

We agree. The judgment of sentence is affirmed.[4]

HOFFMAN, J., concurs in the result.

**4.** Counsel for appellant has brought out attention to a case decided in February 1978, Centre County, *Commonwealth v. Christofferson*, 14 D. & C.3d 124 (1978), which case was affirmed without opinion, by a per curiam panel order dated August 24, 1979. In *Christofferson* the lower court held, *inter alia*, that the defendant could not be found guilty of both rape and involuntary deviate sexual intercourse. We do not find this opinion persuasive nor controlling. If in fact it be contrary to our holding in the instant case, we reject *Christofferson's* holding.