STATE OF WEST VIRGINIA

*v.*

LEONARD G. CARTER

(No. 14222)

Decided September 22, 1981.

*Henderson & Redd, Herbert H. Henderson and William L. Redd,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Appellant, Leonard G. Carter, was convicted on two counts of first degree sexual assault by a jury in the Circuit Court of Cabell County and was sentenced to two concurrent ten- to twenty-year terms in the State Penitentiary. Appellant's major assignment of error is that the two offenses for which he was convicted involve the same criminal transaction. Therefore, it is argued that the

principles of double jeopardy would foreclose punishment for both offenses.[1]

Appellant was charged in count one with first degree sexual assault through forcible compulsion by inserting his penis into the mouth of the victim. In count two the appellant was charged with inserting his penis into the anus of the victim, again by forcible compulsion. He contends that these offenses are part of the same occurrence or transaction and that the sexual offense statute does not make these acts separate offenses. W. Va. Code, 61-8B-3(a), defines first degree sexual assault by use of the term "sexual intercourse:"

> "(a) A person is guilty of sexual assault in the first degree when:

> "(1) He engages in sexual intercourse with another person by forcible compulsion; and

> * * *

> "(ii) He employed a deadly weapon in commission of the crime; . . . ."

Sexual intercourse is defined in W. Va. Code, 61-8B-1-(7), as any act between unmarried persons involving: "penetration . . . of the female sex organ by the male sex organ or . . . contact between the sex organs of one person and the mouth or anus of another person." The use of the word "or," which is a conjunction,[2] expresses the legislative intent that sexual intercourse can be committed in each of the various alternative ways, with each type of prohibited contact constituting a separate offense. From this, it is apparent that the Legislature chose to broadly define the term "sexual intercourse" so that it would cover a variety of sexual encounters.

---

[1] Article III, § 5, W. Va. Const. (1872), provides that no man shall "be twice put in jeopardy . . . for the same offence."

[2] In Note 8 of *Koppers Co., Inc. v. Dailey,* ___ W. Va. ___, 280 S.E.2d 248 (1981), we said the word "or" was a conjunction which indicated the various objects with which it is associated are to be treated separately. In *State v. Elder,* 152 W. Va. 571, 165 S.E.2d 108 (1968), we said the word "or" in the statute under consideration denoted alternatives between the two phrases it connected.

We conclude that W. Va. Code, 61-8B-1(7), defining sexual intercourse, when read in conjunction with W. Va. Code, 61-8B-3, defining sexual assault in the first degree, indicates that an act of forcible oral intercourse and an act of forcible anal intercourse are separate and distinct offenses. Most courts which have had occasion to construe similar sexual offense statutes have reached the same conclusion. *Hamill v. Wyoming*, 602 P.2d 1212 (Wyo. 1979); *Padilla v. State*, 601 P.2d 189 (Wyo. 1979); *cf. State v. Hill*, 104 Ariz. 238, 450 P.2d 696 (1976); *State v. Ware*, 53 Ohio App.2d 210, 372 N.E.2d 1367 (1977), *aff'd*, 406 N.E.2d 1112 (1980); *Commonwealth v. Romanoff*, 258 Pa. Super. 452, 392 A.2d 881 (1978).

This case is distinguishable from *State v. Reed*, ___ W. Va. ___, 276 S.E.2d 313 (1981), where we concluded that a defendant who had engaged in one act of sexual intercourse could not be found guilty of both sexual assault in the second degree and sexual misconduct. In explaining why double jeopardy principles precluded the two separate convictions, we said:

> "Here the sexual contact demonstrated at trial was ancillary to one act of sexual intercourse. We are not confronted with two acts of sexual intercourse, nor are we confronted with an act of sexual intercourse and then an act of sexual contact separated by some period of time." 276 S.E.2d at 320.

In *State ex rel. Watson v. Ferguson*, ___ W. Va. ___, 274 S.E.2d 440 (1980), where the defendant had within a short time interval killed four occupants of a home, we declined to hold that double jeopardy principles precluded multiple punishments. We recognized that jeopardy principles are resolved "not in a mechanical solution relating to proximity in time but rather an analysis of the conduct and intent of the defendant." 274 S.E.2d at 448.

Other courts have adopted much the same approach. In *People v. Perez*, 153 Cal. Rptr. 40, 23 Cal.3d 545, 591 P.2d 63 (1979), the defendant contended that his conviction of forcible rape, forcible sodomy and forcible oral copulation,

committed on the same victim in a relatively short time span, arose out of a single intent and object, that of sexual gratification, and consequently constituted only one offense. The court, in rejecting this claim, stated:

> "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. (See *Neal v. State of California, supra,* 55 Cal.2d at p. 20, 9 Cal. Rptr. 607, 357 P.2d 839.) It would reward the defendant who has the greater criminal ambition with a lesser punishment. (See *Seiterle v. Superior Court* (1962) 57 Cal.2d 397, 403-406, 20 Cal.Rptr. 1, 369 P.2d 697 [con. & dis. opn. of Schauer, J.].)

> "A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." 153 Cal. Rptr. at 45, 591 P.2d at 68.[3]

*See also People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978); *People v. Helton,* 39 Ill. App.3d 672, 349 N.E.2d 508 (1976); *People v. Robinson,* 80 Mich. App. 559, 264 N.W.2d 58 (1978); *Hamill v. Wyoming,* 602 P.2d 1212 (Wyo. 1979).

We, therefore, conclude that where a defendant commits separate acts of our statutorily defined term "sexual intercourse" in different ways, each act may be prosecuted and punished as a separate offense.[4]

---

[3] We recognize that *Perez* was decided under a California statute which provided that an act which is made punishable in different ways by different statutes may be punished under either provision but in no case under more than one provision. However, it is clear that the California Supreme Court has given the statute a reading parallel to constitutional double jeopardy principles. *See* footnote 1, *Neal v. State,* 55 Cal.2d 11, 9 Cal. Rptr. 607, 357 P.2d 839 (1960), *cert. denied,* 365 U.S. 823, 5 L.Ed.2d 700, 81 S.Ct. 708 (1961).

[4] Appellant argues that the State should have been required to "elect" which of the two offenses it would try to the jury, citing *State v. Koton,* 157 W. Va. 558, 202 S.E.2d 823 (1974). *Koton* stands for the principle that election is within the discretion of the trial court and

The appellant next argues that the trial court committed error in failing to properly qualify the victim and chief prosecution witness, who was thirteen years old at the time of the trial. The record in this case reveals that the appellant requested that the trial court qualify the prosecuting witness to testify before any testimony was elicited. The trial court overruled the motion and permitted the witness to testify without prior qualification.

A reading of the testimony of this witness indicates that the witness was without doubt competent and qualified to testify. In fact, the appellant does not question the competency of the witness to testify, but only that the trial court erred in permitting the testimony without first determining the witness' competency. Recently, in *State v. Daggett*, ____ W. Va. ____, 280 S.E.2d 545 (1981), we addressed this issue in connection with the testimony of a seven-year-old child who was the victim of a sexual assault. We indicated that an *in camera* hearing was an appropriate device to determine a witness' competency when an objection is made on the matter. Syllabus Point 6 states:

> "The question of the competency of a child as a witness in any case is always addressed to the sound discretion of the trial judge, and if it appears that a careful and full examination as to the age, intelligence, capacity and moral accountability has been made by the judge and counsel and the trial judge has concluded that he is competent, the appellate court will not reverse the ruling which permits the evidence to be introduced unless it is apparent that it was flagrantly wrong."

will not be required unless defendant will be confused in his defense. In *Koton*, the indictment joined charges for larceny and receiving stolen goods. The Court found election between the charges unnecessary. However, defendant could not be convicted of both charges, because the statute clearly contemplated two separate people, one who stole goods and one who received stolen goods. *Koton* is obviously inapplicable here. More to the point is *State ex rel. Watson v. Ferguson*, ____ W. Va. ____, 274 S.E.2d 440 (1980), where we adopted a liberal joinder rule to enable a defendant to be joined at one trial for multiple offenses arising out of the same transaction.

In *State v. Wilson,* 157 W. Va. 1036, 207 S.E.2d 174 (1974), we dealt with the competency of a ten-year-old witness, noting that "[t]he general rule is that a witness under the age of fourteen years is presumed not to be competent as a witness, and that such competency must be shown. 2 Wigmore, *Evidence* §508 (3d ed. 1940); *People v. Sims.* 113 Ill. App.2d 58, 251 N.E.2d 795." 157 W. Va. at 1047, 207 S.E.2d at 181-82. In *Wilson,* the witness had not been qualified before he was sworn and testified. We concluded, however, that this was not a fatal error since the court had observed his conduct while testifying, and "the court felt, after such observation, that he was competent." 157 W. Va. at 1047, 207 S.E.2d at 182.

While we do not condone the practice of having the witness testify without an *in camera* hearing when there is an objection to his competency, we believe in the present case that there was no reversible error. The witness stated that he was in the seventh grade and made B's and C's in his courses. He answered the questions addressed to him in an intelligent and understanding fashion so that the trial court could have concluded that he was competent. We also note that his age of thirteen years was close to the age when the presumption against competency disappears.[5]

The appellant also contends the court erred in refusing his Instruction No. 2 relating to the propriety of the identification procedures to which appellant was exposed.[6]

---

[5] *State v. Wilson,* 157 W. Va. 1036, 207 S.E.2d 174 (1974), speaks of the presumption against competency of a child fourteen or under. This is probably too static a rule, or at least the term "presumption" should be read in a narrow sense to require an inquiry into competency; the burden of proving such would then be on the party offering the witness. *See McCormick's Handbook on the Law of Evidence* §62 (2d ed. 1972).

[6] Appellant's Instruction No. 2 stated

"The Court instructs the jury that if the evidence in this case raises a reasonable doubt in any juror's mind that the charge made against the defendant, Leonard G. Carter, was based in any part upon an identification of the defendant by Earnest Alan Arthur, which identification was made as the result of an improperly conducted 'photographic lineup' and such possibility raises

We find this instruction abstract, incomplete and an incorrect statement of the law.[7] The term "improperly conducted 'photographic lineup' " contains no standard by which the jury can correctly determine the factual issue of identification. Even if the photographic lineup were improper, this would not mean that the identification was totally improper. As we discuss in the next paragraph, even where the out-of-court identification procedures are suspect, they may be cured under the totality of the circumstances.

Appellant alleges the trial court erred in allowing the in-court identification of the appellant by the victim, claiming it should have been suppressed on the ground that the photographic lineup used to identify him was improper. Since the victim was the only person who could identify the appellant, the claim is also made that a directed verdict of acquittal should have been entered. The record demonstrated that the assault was committed on April 7, and, on April 8, the victim was shown an array of fifty photographs. The photograph of the appellant was not among the fifty. The victim made no identification. On May 28, the victim was shown six photographs, five of which were contained in the original array of fifty, the sixth was a photograph of the appellant. Without hesitation, the victim made a positive identification of the appellant.

Even though the second photographic array was conducted under less than ideal conditions, we do not believe that the in-court identification of the appellant by the victim should have been suppressed. The law on this point originates in *State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976). *Casdorph* drew on the test evolved in *Neil v.*

in the mind of the juror only a reasonable doubt as to the guilt of Leonard G. Carter, then the jury cannot find him guilty."

[7] We have consistently held that: "Instructions in a criminal case which are confusing, misleading, or incorrectly state the law should not be given." Syllabus Point 3, *State v. Bolling*, 162 W. Va. 103, 246 S.E.2d 631 (1978); *State v. Belcher*, 161 W. Va. 660, 245 S.E.2d 161 (1978); *State v. Travis*, 139 W. Va. 363, 81 S.E.2d 678 (1954).

*Biggers*, 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972):[8]

"In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Syllabus Point 4, *State v. Boyd*, ___ W. Va. ___, 280 S.E.2d 669 (1981). *See also,* Syllabus Point 1, *State v. Demastus,* ___ W. Va. ___, 270 S.E.2d 649 (1980); Syllabus Point 1, *State v. Williams,* ___ W. Va. ___, 249 S.E.2d 752 (1978).

Applying this test, we conclude that the in-court identification should not have been suppressed. The record reveals the following matters regarding the opportunity of the victim to observe his assailant at the time of the crime: the appellant approached the victim from across a city street in Huntington; the two then met and talked briefly on the street, face to face, before the appellant pulled a knife and forced the victim into an alley; the assault then lasted approximately fifteen minutes during which time the appellant and the victim were, of course, in close proximity. These events afforded the victim a succession of opportunities to observe his assailant.

The victim's degree of attention was good because he described the incidents surrounding the commission of the crimes in detail. His initial description of the appellant as a black male, 5' 6" tall and weighing approximately 145

---

[8] The *Neil v. Biggers'* formulations developed from the statements in *United States v. Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967), which indicated that a valid in-court identification could be made, if it were shown to be based on observations other than the constitutionally defective pretrial identification procedures.

pounds and around 18 years of age was accurate, since this is the approximate size and age of the appellant. He also described him as having an Afro haircut, wearing a light green toboggan, a green zip-up jacket, green pants and tennis shoes. At the May 28 photographic identification, which occurred fifty-one days after the crime, the victim displayed complete certainty in his identification. All of these factors support the conclusion that the in-court identification had a basis in accuracy independent of the photographic identification. Thus, we conclude the identification was not tainted by the possible suggestiveness of the photographic identification, and was therefore reliable. Consequently, the trial court was correct in admitting the in-court identification testimony and refusing to direct a verdict of acquittal.

The last assignment of error relates to that portion of the testimony of the State's witness, Officer Black, where, over the appellant's objection, he testified that at the preliminary hearing, when the victim first saw the appellant, "he jumped up and started crying and got scared when he saw him." When there is a relevant issue concerning the physical appearance or emotional state of a person, a witness may give his testimony as to such condition. However, in this case, the testimony cannot be said to be offered for the purpose of establishing the victim's condition, since its main design was to show that the victim recognized the appellant on seeing him at the preliminary hearing. The victim's agitated conduct, as described by Officer Black, to the jury, is conduct which McCormick and other commentators call an "implied assertion." *McCormick's Handbook on the Law of Evidence* §250 (2d ed. 1972).[9] As McCormick, *supra*, notes in his discussion, there is some confusion as to the circumstances under which testimony relative to such assertive conduct should be admitted. The main criteria is its clarity of meaning. Here, the excited nature of the conduct also affords an analogy to the spontaneous declaration exception to the hearsay

[9] F. Cleckley, *Handbook on Evidence* § 46 (1978); Falknor, "The 'Hear-Say' as a 'See-Do' Rule," *Evidence of Conduct,* 33 Rocky. Mt. L. Rev. 133 (1961).

rule. *See State v. Young,* ____ W. Va. ____, 273 S.E.2d 592, 597-600 (1980). Consequently, testimony may ordinarily be admitted concerning the assertive conduct of a person if the meaning of such conduct is clear and is accompanied by circumstances which afford the conclusion that the conduct is spontaneous in nature.

Because the obvious purpose of the officer's testimony was to establish the victim's recognition or identification of the appellant, this calls into play another area of law of evidence: the admissibility of a third party's testimony as to an out-of-court identification made by another party. In *State v. Boyd,* ____ W. Va. ____, 280 S.E.2d 669 (1981), we recognized that there was a split of authority over the admissibility of such testimony. 71 A.L.R.2d 449 §13 (1960). We concluded in *Boyd* that third party testimony regarding an out-of-court identification may in certain circumstances be admissible when the identifying witness testifies at trial because both the identifying witness and the third party are then available for cross-examination. *See also Niblitt v. Commonwealth,* 217 Va. 76, 225 S.E.2d 391 (1976); *United States v. Anderson,* 406 F.2d 719 (4th Cir. 1969), *cert. denied,* 395 U.S. 967, 23 L.Ed.2d 753, 89 S.Ct. 2114. We conclude, therefore, that since both the victim and the police officer were witnesses at the trial, the officer's statements as to the victim's reaction on seeing the appellant at the preliminary hearing were admissible.[10]

----

[10] We recognized in *State v. Boyd, supra,* that third-party testimony relative to an out-of-court identification which was constitutionally infirm under *Moore v. Illinois,* 434 U.S. 220, 54 L.Ed.2d 424, 98 S.Ct. 458 (1977), should not be permitted. *Moore* held that testimony relative to a pretrial identification made in violation of the defendant's Sixth Amendment right to counsel could not be admitted regardless of whether there was an independent source for the victim's identification under *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972). In *Moore,* the victim had testified that she had identified the defendant at a preliminary hearing where the defendant had not been represented by counsel. Here, no claim is made that the appellant was without counsel at the preliminary hearing where the victim displayed his assertive conduct.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Cabell County.

*Affirmed.*