442 A.2d 277

**COMMONWEALTH of Pennsylvania**

v.

**Walter ADAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 6, 1981.

Filed Feb. 26, 1982.

26

Frank Palumbo, Jr., Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, McEWEN and POPOVICH, JJ.

WICKERSHAM, Judge:

Walter Adams, appellant herein, was tried before the Honorable Stanley L. Kubacki sitting with a jury at a trial commencing June 23, 1980 and was convicted of numerous offenses involving the abduction and rape of a young woman.

The evidence at trial established that on two separate occasions Adams committed sexual crimes against a young woman named Kim Walker. The victim testified that on November 28, 1979, she was approached by Adams inside the Pony Trail Bar, 52nd and Stiles Street, Philadelphia. Adams tried to have a conversation with the victim, but she cut him short and stated she had to go out on an errand. She was pregnant at the time and not interested in his company. Adams persisted in his attempts to become intimate with her and offered to talk with her. Using the pretext that he would protect her on the streets against unknown dangers,

he accompanied her. He persuaded her to stop with him, for a moment, at his sister's house. On their way back to the Pony Trail Bar, he took a knife from his pocket, stuffed a bandana in the victim's mouth, pulled her into an alley, and pushed her to her knees. He demanded that she perform an act of deviate sexual intercourse. When she refused, he punched her in the stomach and the face. He pulled her to her feet, dragged her out of the alleyway, down 51st Street and into a cemetery located at 51st Street and Girard Avenue. Adams pushed the victim and punched her again. He forced her to partially disrobe. He hit her in the face and made her commit oral sex on him. The victim vomited. At that point Adams took her wristwatch and left her in the cemetery. The victim made her way back to the Pony Trail Bar where she told some friends what had happened. The police were summoned and the victim was taken to the hospital.

Several weeks later, on December 18, 1979, Adams and several unknown cohorts abducted the victim from the street at the intersection of 52nd and Warren Avenue in Philadelphia. The victim, on this second occasion, was taken to a nearby house, stripped of her clothing, tied to the bedstead and raped repeatedly.

The men, with the exception of defendant also forced her to commit oral sex on them. One of the men gave her injections which caused her to become somewhat disoriented, nervous, and confused. The victim estimated that her ordeal lasted four days during which she was subjected to frequent sexual abuse. She was injected with drugs, denied food and drink, and left tied to a bed. Finally, on what she estimated to be the fourth day she managed to escape when the men forgot to tie her up. She managed to gather her clothes together, open a window, jump out, and run away. The police were summoned and Adams was arrested shortly thereafter. The victim was hospitalized. It was determined in the hospital that she had been injected with a quantity of methamphetamine. For these crimes, Adams was sentenced to terms which, in the aggregate, constitute a sentence of twelve to twenty-five years.

I. WHETHER THE CHARGE OF INVOLUNTARY DE-
VIATE SEXUAL INTERCOURSE MERGED IN THE
RAPE CHARGE WHEN BOTH OF THE CHARGES
AROSE OUT OF THE ONE CRIMINAL EPISODE,
MAKING IMPOSITION OF SEPARATE CONSECU-
TIVE SENTENCES FOR BOTH CRIMES AMOUNT
TO DOUBLE JEOPARDY?

In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d
187 (1977) the applicable rule for determining whether two
offenses are sufficiently distinguishable to permit the impo-
sition of cumulative punishment was set forth:

The Double Jeopardy Clause of the Fifth Amendment,
applicable to the States through the Fourteenth, provides
that no person shall 'be subject for the same offense to be
twice put in jeopardy of life or limb.' It has long been
understood that separate statutory crimes need not be
identical—either in constituent elements or in actual
proof—in order to be the same within the meaning of the
constitutional prohibition. . . .

[T]he Fifth Amendment double jeopardy guarantee serves
principally as a restraint on courts and prosecutors. The
legislature remains free under the Double Jeopardy
Clause to define crimes and fix punishments; but once the
legislature has acted courts may not impose more than one
punishment for the same offense and prosecutors ordinari-
ly may not attempt to secure that punishment in more
than one trial.

The Double Jeopardy Clause 'protects against a second
prosecution for the same offense after acquittal. It pro-
tects against a second prosecution for the same offense
after conviction. And it protects against multiple punish-
ments for the same offense. . . .' Where consecutive sen-
tences are imposed at a single criminal trial, the role of
the constitutional guarantee is limited to assuring that the
court does not exceed its legislative authorization by im-
posing multiple punishments for the same offense. . . .

The established test for determining whether two of-
fenses are sufficiently distinguishable to permit the impo-

sition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180 [182] 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .

This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . .'

*Id.* at 165, 97 S.Ct. at 2225, 53 L.Ed.2d at 193–94.

■ Walter Adams alleges that he was placed twice in jeopardy due to the imposition of separate consecutive sentences after his conviction for two counts of involuntary deviate sexual intercourse and one count of rape. Although rape, 18 Pa.C.S.A. § 3121 and involuntary deviate sexual intercourse, 18 Pa.C.S.A. § 3123, may constitute the same crime for the purposes of the double jeopardy clause, where the defendant's actions constitute separate injuries to the "peace and dignity of the Commonwealth," then each separate act may be punished separately.

■ Here, the first criminal act of Adams occurred during the November 29 incident when he coerced Ms. Walker into an act of oral sodomy. For this act, he was convicted and sentenced on Bill 1507, charging involuntary deviate sexual intercourse during the November 29 incident [N.T. 5.67]. Because the act of Adams leading up to his conviction on Bill 1507 was separate from the other charges of rape and involuntary deviate sexual intercourse arising out of the December incident, the double jeopardy clause has not been affected by his sentence.

The second and third criminal acts of Adams occurred during the second incident of December 15–18. During this

second incident, Adams first coerced Ms. Walker into an act of oral sodomy and then had coerced vaginal sex with Ms. Walker (N.T. 2.25). As a result of the second incident, he was convicted and sentenced under Bill 1511, charging involuntary deviate sexual intercourse. He was also convicted and sentenced on Bill 1509, charging rape for the separate act of vaginal intercourse. It is also noteworthy, that in its charge the trial court stated that a conviction for involuntary deviate sexual intercourse required proof of coerced sexual intercourse between the mouth or the anus of two persons not married to each other (N.T. 5.67), and then charged that a verdict of guilty on the rape count required proof of coerced intercourse between two persons not married to each other. As a result of these instructions, there can be no doubt that the two verdicts of guilty returned on Bills 1509 and 1511 were based upon the two separate acts of Adams. The sentences on these bills are, hence, also based on two separate acts and are, therefore, not violative of double jeopardy.

As stated in *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976):

Analysis of duplicitous sentence questions has traditionally revolved around the concept of injury to the sovereign, in this case the Commonwealth. One of the purposes of the criminal law is to punish offenses against the Commonwealth, as defined by the Legislature, and it follows that, '[t]he criminal prosecution is for the injury done to the Commonwealth, and not for the injury done to the individual who may, if entitled, obtain redress through a civil action. Where there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth.'

*Id.*, 468 Pa. at 331, 362 A.2d at 231.

In *Commonwealth v. Wojciechowski*, 285 Pa.Super. 1, 426 A.2d 674 (1980), we said:

It is well established that for two crimes to merge, one must 'necessarily involve' the other. . . . It has oft been

stated that in order for one crime necessarily to involve another, the essential elements of one must also be essential elements of the other. . . . A less mentioned and perhaps more obvious requirement is that the crime be part of the same transaction.

. . . .

Since the evidence presented supported all the convictions, defendant was appropriately and properly sentenced for each offense. It is unthinkable that a woman, once having been raped, is in the position where her attacker can then abuse her in any other fashion sexually, such as penetrating her anus or mouth with his penis, without incurring further sanctions for these separate and distinct crimes.

'Defendant cannot escape criminal liability merely because he chose to subject the victim to every possible kind of aggressive, physically abusive, sexual behavior in his depraved arsenal.'

*Id.*, 285 Pa.Superior Ct. at 9, 426 A.2d at 677–78 (citations omitted).

II. WHETHER THE TRIAL JUDGE'S EXTRAJUDICIAL COMMENT DURING CROSS-EXAMINATION OF A DEFENSE WITNESS CONSTITUTED PREJUDICE WHICH MAY REASONABLY BE SAID TO HAVE DEPRIVED THE APPELLANT OF A FAIR AND IMPARTIAL TRIAL?

Adams argues he was deprived of a fair trial due to the comment of the trial judge during the Commonwealth's cross-examination of a defense witness. The particular witness Ms. April Brooks, testified on direct examination that Adams had appeared at her home with a female companion on the night of the first incident and had asked to use a room. Ms. Brooks further testified that she refused to give him the use of a room. According to Ms. Brooks, he then left her house and returned fifteen minutes later with a note from his sister, who lived with Ms. Brooks, stating that Adams had permission to use a room in the house (*see* N.T. 3.83–85).

On cross-examination, the Commonwealth asked Ms. Brooks if she had ever before been presented with a note giving permission to use a bed in her house. Ms. Brooks responded "No" (N.T. 3.88). The following then transpired:

Q. Didn't that strike you rather strange and unusual?

Mr. Stanshine: Objection

The Court: No, overruled. It's a strange story.

N.T. at 3.88–3.89.

We find no merit to the assertion of appellant that the above statement by the trial judge was prejudicial. To the contrary, the statement was made in the context of an evidentiary ruling and was used to explain that ruling to the defense. In any event, even if error, it was harmless.

Even in the event we hold this comment to be unduly prejudicial to the appellant, we certainly cannot hold that it is of such a nature or substance or delivered in such a manner as to have deprived appellant of a fair and impartial trial. *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977). Thus, we also dismiss the contention.

*Commonwealth v. Henderson*, 275 Pa.Super. 350, 357, 418 A.2d 757, 761 (1980).

III. WHETHER THE CONDUCT OF THE PUBLIC DEFENDER HAD NO REASONABLE BASIS DESIGNED TO EFFECTUATE HIS CLIENT'S INTERESTS, DENYING THE APPELLANT HIS CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW?

IV. WHETHER, IF IN THE CONGLOMERATE, THE APPELLANT WAS DENIED A FAIR AND IMPARTIAL TRIAL DUE TO THE TRIAL COURT'S EXTRAJUDICIAL COMMENT AND THE INEFFECTIVENESS OF THE PUBLIC DEFENDER, AND WHETHER THIS AMOUNTED TO HARMFUL ERROR REQUIRING A NEW TRIAL?

'[B]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives

available to counsel, the strategy *actually* employed was so unreasonable that no competent lawyer would have chosen it.' *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967). Once it has been determined that the particular course of action chosen by counsel had *some reasonable basis* designed to effectuate his client's interests, counsel will be deemed constitutionally effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Additionally, there is a presumption in the law that counsel is effective, *Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978); *Commonwealth v. Murray*, 452 Pa. 282, 305 A.2d 33 (1973); thus, the burden of establishing ineffectiveness rests upon appellant. *Commonwealth v. Shore*, 487 Pa. 534, 410 A.2d 740 (1980); *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976).

*Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 234–35 (1981).

And in *Commonwealth v. Davenport*, 494 Pa. 532, 431 A.2d 982 (1981):

Our inquiry here, as in every case where the effective assistance of counsel is at issue, is defined by *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). There, we stated:

[O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

427 Pa. at 604–605, 235 A.2d at 352–53.

*Id.*, 494 Pa. at 535, 431 A.2d at 984.

Instantly, an independent evaluation of the record shows a reasonable basis for the course employed by counsel. The

fact that counsel requested a Bighum motion (N.T. 1.69) indicates that he had considered placing defendant on the stand. It thus cannot be said that this is a case where counsel was ineffective because of oversight or failure to consider the various alternatives available. *Commonwealth v. Twiggs*, 460 Pa. 105, 109, 331 A.2d 440, 443 (1975).

The defendant offered a consent defense for the first incident on November 29 and an alibi defense for the incident of December 19. According to the testimony of Detective Vale (N.T. 2.212), defendant had made a statement regarding the first incident after his arrest. In that statement defendant claimed that the November 29 incident with Ms. Walker was consensual and that the two had had vaginal sex. "We screwed, went to bed. We laid down and had sex on the grass." (N.T. 2.12).

Ms. Walker's version of the events of November 29 was notably different. She testified defendant coerced her into an act of oral sex by beating her, knocking her over and threatening her with a knife. After the incident, Ms. Walker had either vomited or regurgitated on a tombstone (N.T. 1.143).

After her escape, Ms. Walker informed the police and was taken to a hospital. Samples from her throat indicated the presence of spermatozoa. Samples taken of the regurgitated matter found on the tombstone also indicated the presence of spermatozoa. Further evidence adduced at trial showed Ms. Walker had bruises on her face and neck and was hospitalized for three days with abdominal problems (N.T. 1.157, 2.106, 3.09, 3.57).

Had defendant reiterated his original story of consensual vaginal sex, he would have been subject to impeachment because the physical evidence proved beyond dispute that Ms. Walker had forcible oral intercourse on November 29.

Had defendant altered his story to coincide with the physical evidence, *e.g.*, claimed that he and Ms. Walker had consensual oral sex, his story would have again been discredited by his earlier inconsistent statement to the police, his

certain inability to give a credible explanation of Ms. Walker's subsequent injuries, hospitalization and vomiting, and by Ms. Walker's own version of the night's events.

Defense counsel, under these circumstances, wisely chose not to put the defendant on the stand. Instead, counsel tried to show consent for the first incident circumstantially e.g., testimony by defendant's friend and sister that they had seen defendant and Ms. Walker together on November 29 holding hands and asking to use a bed (N.T. 3.107, 3.105, 3.84). Of course, these same considerations regarding cross examination also applied if defendant took the stand to give his alibi defense. Even if he tried to avoid testimony regarding the first incident, his failure to explain that, while claiming an alibi for the second incident would have destroyed his very viable alibi defense for that second incident. Under such circumstances, defendant's counsel wisely chose to place other individuals on the stand to give the alibi defense, individuals whose credibility was not so easily assailed.

■ Defendant also claims counsel was ineffective for failing to call certain witnesses who allegedly could have helped defendant's case: e.g. Angelitude Hines, Francis Smith, Mark Blackwell and Venessa Lee.

Defendant's has failed to produce evidence to support his contention that counsel was ineffective for failing to call additional witnesses. *Commonwealth v. Bullock*, 272 Pa.Super. 362, 415 A.2d 1240 (1979). Defendant must substantiate his claim that the unadduced evidence would have been helpful to his defense, *Commonwealth v. Charleston*, 251 Pa.Super. 311, 380 A.2d 795 (1977), and this he has failed to do.

A reason of arguable merit for not calling these witnesses is clear from the record. Two of the witnesses, Venessa Lee and Mark Blackwell, had gone to the Pony Trail Bar with Ms. Walker on the evening of the first incident and had assisted her after defendant had sexually assaulted her (N.T. 1.153–1.156). Indeed, Venessa Lee had taken Ms. Walker to

the hospital after the November 29 incident and was on-call as a Commonwealth witness throughout the trial (N.T. 5.75, 511).

The other two witnesses would presumably have been additional alibi witnesses for defendant whose testimony would have been merely cumulative, since defendant had already presented four alibi witnesses.

■ Finally defendant claims his trial counsel was ineffective because he failed to object to the hearsay testimony of Detective Vale. Counsel did in fact object to the testimony and his objection was overruled (N.T. 4.183).

Because defendant's allegations of ineffectiveness are all either tactical decisions by counsel or frivolous claims, defendant is not entitled to a new trial.

> It is axiomatic that failure to raise a meritless claim cannot render counsel ineffective. Thus, in evaluating appellee's claim of ineffective assistance of counsel, we must first determine whether an object to the clerk's remark would have been of arguable merit:
>> The initial factor which must be considered... is whether the claim which post-trial counsel is charged with *not* pursuing had some reasonable basis .... It is only when the claim which was foregone was of arguable merit that we must make an inquiry into the basis for ... counsel's decision not to pursue the matter.
>
> *Commonwealth v. Hubbard*, 472 Pa. 252 [259], 277–78, 372 A.2d 686, 695–96 (1977) (Emphasis supplied). Because we are convinced that the jurors here voluntarily and unequivocally assented to the verdict in direct response to a clear and unambiguous question individually submitted to each of them, an objection by trial counsel to the jury poll would have been manifestly futile. *See Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974) (counsel will not be held ineffective for failing to perform a futile act).

*Commonwealth v. Ciotti*, 496 Pa. 232, 236–37, 436 A.2d 983, 985 (1981).

As was said in *Commonwealth v. Bandy*, 494 Pa. 244, 431 A.2d 240 (1981):

There is no indication in this case that a more intensive investigation than was conducted would have developed more than was already known. Moreover, we reiterate that 'a finding of ineffectiveness [can] never be made unless [it can be] concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized.' .... We simply cannot reach such a conclusion here and therefore must reject appellant's claim that his guilty plea was based upon the ineffective assistance of counsel.

*Id.*, 494 Pa. at 249, 431 A.2d at 243 (citation omitted).

Judgment of sentence affirmed.