561 A.2d 793

**COMMONWEALTH of Pennsylvania**

**v.**

**Walter ADAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 30, 1989.

Filed July 12, 1989.

514

Mark J. McCarriston, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal *nunc pro tunc* from an order below denying appellant's petition for relief under the Post Conviction Hearing Act (PCHA), 42 Pa.C.S.A. §§ 9541–9551.[1] Appellant contends that the PCHA court should have granted his petition because trial counsel was ineffective for failing to file a motion to suppress his post-arrest statement to the police. Additionally, appellant contends that his prior appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel. We disagree, and for the reasons that follow, we affirm the order below.

1. The Post Conviction Hearing Act has been modified in part, repealed in part, and renamed the Post Conviction Relief Act. 42 Pa.C.S.A. §§ 9541–46. The .new provision applies to all actions for collateral relief instituted on or after April 13, 1988 the effective date. The instant petition was filed before April 13, 1988; thus, it will be evaluated under the former act.

Following a jury trial, on June 27, 1980, appellant was convicted of rape, kidnapping, two counts of involuntary deviate sexual intercourse (hereinafter "IDSI"), criminal conspiracy and two counts of simple assault. After denying post-verdict motions, on September 16, 1980, the court sentenced appellant to consecutive terms of imprisonment of four-to-eight years for one count of IDSI, three-to-six years for the second count of IDSI, three-to-six years for rape and two-to-five years for conspiracy. Appellant filed a *pro se* petition for reconsideration of sentence which was denied by the court. Thereafter, appellant appealed to this Court. This Court affirmed the judgments of sentence on February 26, 1982. *See Commonwealth v. Adams*, 296 Pa.Super. 24, 442 A.2d 277 (1982). On April 7, 1983, appellant filed a petition under the PCHA. Counsel was appointed and an evidentiary hearing was held to determine whether appellant had received effective assistance from prior counsel. On October 2, 1986, the PCHA court denied appellant's petition. Appellant then appealed to this Court, which dismissed his appeal due to procedural defects on April 14, 1987. Appellant with the aid of newly appointed counsel filed an amended petition under the PCHA. This appeal followed an order by the court granting appellant permission to appeal its October 2, 1986 order *nunc pro tunc.*

The law governing ineffective assistance of counsel claims was recently summarized by our Supreme Court as follows:

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceed-

ings. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

*Commonwealth v. Davis,* 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). In this analysis, counsel is presumed to be effective, *Commonwealth v. Norris,* 305 Pa.Super. 206, 210, 451 A.2d 494, 496 (1982), and appellant bears the burden of establishing that trial counsel was ineffective. *Commonwealth v. Petras,* 368 Pa.Super. 372, 375, 534 A.2d 483, 484 (1987); *Commonwealth v. Jones,* 298 Pa.Super. 199, 205, 444 A.2d 729, 732 (1982).

Appellant contends that appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel for failing to file a motion to suppress appellant's statements to the police following his arrest. Specifically, appellant claims that he was too intoxicated to make a voluntary and intelligent waiver of his *Miranda* rights and counsel, therefore, should have sought suppression of his statement.

The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but goes only to the weight to be accorded to it.

*Commonwealth v. Smith,* 447 Pa. 457, 460, 291 A.2d 103, 104 (1972).

Our first inquiry is to determine if appellant's claim has arguable merit. At the PCHA hearing, appellant testified that he had been drinking excessively the entire day before his arrest and that he had repeatedly tried to inform counsel of his intoxication but that counsel was not listening:

[Appellant's PCHA counsel:]

Q. And do you recall that specific date when you were arrested by the police for this case?

[Appellant:]

A. Yes, I do.

Q. And can you tell the Court how you were feeling at that time, what your general health was at that time?

A. Well, I had been drinking all that day and I was intoxicated when the detective came up and arrested me.

Q. If you recall, how much had you been drinking that day?

A. I was drinking heavy, a whole lot, as a matter of fact, like I say, I been drinking all day long and how much I couldn't actually say but I know it was a lot.

Q. Do you recall what you were drinking?

A. Yes, I do. I was drinking some vodka, wine, beer and I had been drinking gin.

Q. Were these in large bottles, small bottles?

A. Large bottles.

. . . . .

Q. And at a subsequent date did you have a meeting with someone from the Defender Association or with Mr. Stanshine [trial counsel] to discuss your case?

A. I didn't talk to Marty Stanshine until we was getting ready to start trial and that was the only time I talked to him during that time I was letting him know when the police had come out and arrested me I had been drinking very heavily and I was drunk when they arrested me.

Q. Did you attempt to notify Mr. Stanshine or anyone else from the Defender Association that you didn't understand what was happening at the police station?

A. I tried to tell him. As a matter of fact, I tried to tell him even during the trial I was trying to tell him, any time I try to tell him anything he said don't say anything to him. I figured he was the lawyer, he must know what he was doing.

*See* PCHA Hearing at 5–6, 9. We note, however, that appellant's conclusion that he was intoxicated is belied by

his ability to recall the details surrounding his arrest and statement. With regard to the events leading up to his arrest and statement, appellant testified:

Q. And do you recall the police coming to your house that day or that night?

A. They came that morning. It had to be about the 19th I think it was.

Q. And could you tell the Court what happened when the police came to your house?

A. Well, when they came there was a knock on the door and I had my wife to go down and see who it was and she went to the door and the detective, he told her who it was and he said he wanted to ask me some questions. I told her to let him in and when the door was opened they shoved her to the side and all the kids came running out to see what was going on, they came in with guns all in their hands and I was laying in the bed when they came in and the detective came in and told me you can come with me now or you can wait until I get a warrant for your arrest and at that time I told him I'll wait because I didn't know what was going on and then he forced me out the bed and put the gun in my chest and forced me out the bed and took me down the Roundhouse.

.        .        .        .        .

Q. And do you recall accompanying the police down to the station that night?

A. Yes.

Q. And do you recall also sitting with a police officer in an interview room that day or that night?

A. It was two of them there.

Q. And were the police officers questioning you at all?

A. Yeah, they was questioning me. As a matter of fact, *to quote what the detective told me, the one that arrested me, he said I'm going to try to get you a hundred years just like I got the other guy.*

Q. He said that to you?

A. Yes, he did.

Q. Did you recall that detective's name?

A. I think it was Vail [sic], I'm not sure which one it was.

*See* N.T. PCHA Hearing at 6–7 (emphasis added). Appellant thus was able to recall, in detail, the sequence of events from the time the arresting detective arrived at his house, as well as the name of the detective, and that detective's specific remarks.

Following the hearing, the PCHA court apparently found appellant's testimony concerning his intoxication to be incredible and denied his petition as meritless. See PCHA Opinion at 3. With regard to that determination, we are mindful that:

[t]his court does not sit as trier of issues of fact, expecting to be persuaded that one or the other side is more credible. That is a task for a trial court and we would never invade that area of the judicial process. Rather, we look to whether the PCHA court's determination is supported by evidence of record and is otherwise free of legal error.

*Commonwealth v. Lutz*, 492 Pa. 500, 507, 424 A.2d 1302, 1305 (1981) (citations omitted). Here, in light of appellant's ability to recall the arrest and statement in such detail, it was clearly within the province of the PCHA court to discredit his testimony.

Moreover, the trial testimony of the arresting detective provides further support for the PCHA court's conclusion that appellant's statement was not involuntary. During the trial, Detective Vale testified as follows:

Q. Would you describe what you first said to the defendant?

A. Well, I informed Mr. Adams I was investigating an alleged rape which is supposed to have taken place on November 28th, 1978. I explained to him where it took place, inside the cemetery. I advised him that he was going to be charged with this rape and I advised him of his Constitutional warnings which we

have from the police standard interrogation card, 75–Miscellaneous–3. I asked him if he understood these questions. I then asked him seven questions from this card and I recorded his answers to these questions. I then took a statement from Mr. Adams in reference to the rape.

Q. And were his answers, before he made any reference to the rape, consistent with his willingness to speak to you?

A. Yes, sir.

Q. How would you describe his condition at the time that you interviewed him?

A. Well, not having known him before, *I can only describe my conception of his condition. He was wide awake. Apparently—he was in normal condition.*

See N.T. June 24, 1980 at 2.208–2.209 (emphasis supplied). When questioned on cross-examination about the interrogation, Detective Vale testified as follows:

Q. You questioned Mr. Adams and you said you warned him of his rights. You told him he had a right to remain silent; isn't that right?

A. Yes.

Q. And you told him whatever he said could be used against him; isn't that right?

A. Yes, sir.

Q. And you told him he could have a lawyer; isn't that right?

A. Yes, sir.

Q. And Mr. Adams told you he didn't want to remain silent; isn't that right?

A. Yes, sir.

Q. And he told you he didn't want a lawyer; isn't that correct?

A. Yes.

Q. He told you he just wanted to tell you what happened, is that right?

A. Yes, sir.

Q. And you didn't force him or anything, he voluntarily, of his own free will, told you what was in that statement; is that correct?

A. That's correct.

*See* N.T. June 24, 1980 at 2.226–7.

Because the record supports the PCHA court's determination that appellant had "sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it," *Commonwealth v. Smith, supra,* we conclude that his claim that counsel was ineffective for failing to file a motion to suppress his statement lacks arguable merit. *See Commonwealth v. Lutz, supra.* Similarly, appellant's contention that appellate counsel were ineffective must fail. Accordingly, we affirm the order below.

Order affirmed.