J-S22015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TODD O. REEDER | |
| Appellant | No. 977 MDA 2015 |

Appeal from the Judgment of Sentence May 21, 2015
In the Court of Common Pleas of Huntingdon County
Criminal Division at No(s): CP-31-CR-0000627-2013

BEFORE:  MUNDY, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED MARCH 09, 2016**

Appellant, Todd O. Reeder, appeals from the May 21, 2015 aggregate judgment of sentence of three and a half to twelve years' incarceration, imposed after the trial court convicted Appellant of robbery, theft by unlawful taking, possession of a weapon, and simple assault.[1]  Upon review, we affirm.

The certified record reveals that Appellant was arrested and charged with the aforementioned crimes arising from the armed robbery of a Rite-Aid Pharmacy in Mount Union Borough, Pennsylvania, on November 19, 2013. Appellant filed an omnibus pre-trial motion on May 20, 2014, in which, *inter*

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701, 3921, 907 and 2701, respectively.

*alia*, he sought to suppress statements he made to police on November 21, 2013, on the basis that he was "highly intoxicated." On October 16, 2014, the trial court convened an evidentiary hearing, and subsequently issued an order denying Appellant's motion to suppress. On January 21, 2015, the trial court filed a memorandum in support of its order denying suppression. The case proceeded to a bench trial on March 17, 2015, after which the trial court rendered its guilty verdicts. The trial court sentenced Appellant to an aggregate sentence of three and a half to twelve years of incarceration on May 21, 2015.

Appellant filed a timely appeal on June 9, 2015. The following day, the trial court ordered Appellant to comply with Pennsylvania Rule of Appellate Procedure 1925(b). Appellant filed his concise statement of errors complained of on appeal on June 29, 2015, and the trial court filed a responsive memorandum on July 9, 2015, in which it referenced its January 21, 2015 memorandum, stating it was "satisfied that in that adjudication we adequately explained our reason for denying the motion to suppress." Memorandum, 7/9/15, at 3.

On appeal, Appellant presents his suppression issue for our review as follows.

> 1. Whether the trial court erred and abused its discretion in denying Appellant's Motion to Suppress statements made upon his arrest?

Appellant's Brief at 5.

Appellant specifically contends that the statements he made to police should have been suppressed because "the police impermissibly questioned him" when "he was too intoxicated to legally waive his rights to remain silent." *Id.* at 9.

Our standard of review from an order denying a suppression motion is as follows.

> [W]e may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Russo*, 934 A.2d 1199, 1203 (Pa. 2007) (citation omitted).[2]

---

[2] Our Supreme Court recently clarified our scope of review when considering a challenge to a trial court's suppression ruling as it relates to "the extent of the record that the appellate court consults when conducting that review." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013). The Supreme Court held that such review is limited to the suppression hearing record, and "it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing." *Id.* at 1085. Because prior cases held that a reviewing court could consider the trial record in addition to the suppression record, our Supreme Court determined that the more limited scope announced in *In re L.J.* would apply prospectively to cases where the suppression hearing occurred after October 30, 2013. *Id.* at 1088-1089. Instantly, the subject suppression hearing was held on October 16, 2014. Accordingly, our scope of review is confined to the suppression hearing record.

Here, our independent review of the record reveals that four witnesses testified at the suppression hearing. The Commonwealth called Pennsylvania State Trooper Michael Davis, while Appellant called two of his attorneys and took the stand on his own behalf.

Trooper Davis testified to responding to a call "that the Rite Aid in Mount Union had been robbed by an individual wearing a mask, brandishing a gun." N.T., 10/16/14, at 6. Trooper Davis received a tip that Appellant was a "person of interest," and obtained a search warrant for Appellant's home, where police found evidence "linking [Appellant] to the robbery." *Id.* Appellant was "taken into custody and transported back to state police Huntington where he was met by [Attorney] Newfield of the Public Defender's Office." *Id.* at 6-7. After Appellant met with Attorney Newfield, he was interviewed by Trooper Davis and Trooper Aungst. *Id.* at 7. Trooper Davis testified that prior to interviewing Appellant, he "read the whole Miranda to him." *Id.* Trooper Davis further stated that Appellant "relayed that he understood and chose to speak with me." *Id.* Trooper Davis proceeded to interview Appellant in the presence of Attorney Newfield. *Id.* Trooper Davis described Appellant's demeanor as follows.

> [TROOPER DAVIS:] He was cognizant of his surroundings. He knew where he was. While we were on scene at his house, we attempted to speak with him there. At that point he requested an attorney so we set up the meeting with Mr. Newfield for that night. He had the presence of mind to ask for an attorney.

THE COURT:    Was he intoxicated?

[TROOPER DAVIS:]    I would say that he was under the influence of some pills, but I don't think he was intoxicated to the degree that he could not make a sound decision.

[COMMONWEALTH:]

Q.    What indicia of intoxication did you notice?

A:    Pinpoint pupils.

Q:    Was he staggering?

A:    No.

Q:    Slurring his words?

A:    No.

Q:    Did he seem aware and lucid during the interview?

A:    Yes, he did.

*Id.* at 7-8.

Trooper Davis added that Appellant had the dexterity to write his signature, and did not slur his words or seem confused. *Id.* at 9. He further testified that he did not think that Appellant was under the influence of alcohol, and did not smell any alcohol. *Id.* at 10. Trooper Davis could not recall Appellant saying anything about being under the influence during the interview, although Appellant did mention "during his interview at the barracks of how intoxicated he was during the robbery itself." *Id.* at 11.

Next, Appellant waived his attorney-client privilege and called Attorney Nicholas Newfield, who testified to being a public defender and meeting with

Appellant prior to his interview with police. Attorney Newfield stated, "When I first walked in the room, when I first walked in, he said he planned on talking to the police and if I was going to tell him otherwise, I can leave now. … I told him, 'Relax. Let me talk to you. Sit down. Let's just kind of talk between me and you.'" *Id.* at 14. Attorney Newfield further explained, "First I told him talk to me and then we will go from there. Just tried to get him to kind of ease down and give me information or at least talk to me as his counsel and we will see where it goes from there. I think I did a good job of having him just talk to me about it." *Id.* at 15. Attorney Newfield "told him wait until Tuesday. I assumed there would be a preliminary hearing the following week. … I said, 'Let me go out and talk to the D.A. to see if we can get some kind of offer if you're gonna talk.'" *Id.* at 16. Specifically, Attorney Newfield advised Appellant as follows.

> I told him not to [talk to the police]. I advised him it would be better just to wait until Tuesday and sleep on it, think about it, give [him] some more time. At that time point he was still adamant on speaking. … He said he was talking. He said, again, if I told him not to, I could leave now; he didn't need me there; he was going to talk to them and give them a statement.

*Id.* at 16-17.

Regarding Appellant's demeanor, Attorney Newfield described Appellant as "appearing tired." *Id.* at 17. He said "[t]hat stood out more so than anything. He just appeared tired. Speaking-wise, though, we were

able to hold a conversation. He understood what I was explaining to him. Coherent." *Id.*

Appellant next waived his attorney-client privilege and called Attorney Jennifer Habel, who also was a public defender, and who had been appointed to represent Appellant at his preliminary hearing. *Id.* at 20. Attorney Habel testified that Appellant "was very adamant that he did not want Attorney Newfield to be with him for that particular pre-trial conference … and [Appellant] was extremely upset at Attorney Newfield because he believed that he had been promised State Intermediate Punishment and that was the reason he gave a statement. … [Appellant] said he was extremely messed up that night. … I believe he had been a heavy [drug] user for a number of years, and he was coming off of something." *Id.* at 22-23. Attorney Habel explained as follows.

> He was very angry at Attorney Newfield during that meeting. That might have been his exact words. He has said to me on numerous occasions he believed he was extremely messed up. I wasn't there. Any conversation I have had with Attorney Newfield was that he believed he was fine.

*Id.* at 23.

Lastly, Appellant testified that he was "absolutely" under the influence of "Xanax, Adderall, percoset and heroin" when he made his statements to police. *Id.* at 24-25. He claimed to have ingested "at least 10 pills" before he "walked out to see the police." *Id.* at 25. Appellant testified he had been using drugs "all that day." *Id.* He stated that he "wasn't coherent" and

"had no recollection of what actually happened." *Id.* at 26. Appellant averred, "I was extremely messed up. My level of intoxication was very high. It's possibly been the highest ever in my life." *Id.* at 27. Appellant elaborated as follows.

> I really don't recall even speaking to Trooper Davis. I don't recall speaking to Mr. Newfield. I don't recall the investigation as it happened that night. The one thing I do recall is having a police officer asking me a question over my shoulder and me realizing I was speaking to the police and me stating I shouldn't be speaking to anybody right now I'm so messed up on Xanax, percoset, Adderall; I haven't slept in days; I shouldn't be speaking to anybody.
>
> And that's when I saw a person who I later found out was Mr. Newfield stand up, put his arms in the air, and tell me, "But I can get you SIP." And I remember looking up and seeing District Justice Wilt and a court reporter, and that is my entire recollection of the night I was arrested.

*Id.* at 27-28.

After hearing from the four witnesses, the trial court denied Appellant's suppression motion, stating that it would "file written findings and conclusions after the preparation of a transcript." *Id.* at 32. On January 21, 2015, the trial court filed its memorandum in which it credited the testimony of Trooper Davis and Attorney Newfield, and concluded that Appellant "had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it." Memorandum, 1/21/15, at 6, *citing* **Commonwealth v. Smith**, 291 A.2d 103 (Pa. 1971).

- 8 -

It is clear from our review that the trial court as factfinder did not abuse its discretion in accepting as credible the testimony of Trooper Davis and Attorney Newfield. As detailed above, the trial court's factual findings are supported by the record. Furthermore, the trial court's legal conclusions are not erroneous. *Russo, supra*. We have explained as follows.

> [T]he law in Pennsylvania pertaining to the waiver of *Miranda* warnings while intoxicated is well-settled:
>
>> The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but goes only to the weight to be accorded to it.
>
> *Commonwealth v. Adams*, 385 Pa.Super. 513, 561 A.2d 793, 795 (1989) (citation omitted). "[W]hen evidence of impairment is present, it is for the suppression court to decide whether the Commonwealth has established by a preponderance of the evidence that the suspect nonetheless had sufficient cognitive awareness to understand the *Miranda* warnings and to choose to waive his rights." *Commonwealth v. Britcher*, 386 Pa.Super. 515, 563 A.2d 502, 507 (1989) (citations omitted).

*Commonwealth v. Ventura*, 975 A.2d 1128, 1137-38 (Pa. Super. 2009) (footnote omitted), *appeal denied*, 987 A.2d 161 (Pa. 2009).

Based on the foregoing, we find no merit to Appellant's claim that the trial court erred and abused its discretion in determining that Appellant had sufficient mental capacity when he made his statements, and thus denying

Appellant's suppression motion. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016