J-S02021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CARLOS RIVERA | |
| Appellant | No. 3715 EDA 2015 AND 3716 EDA 2015 |

Appeal from the Judgment of Sentence Entered November 12, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos: CP-51-CR-0014762-2013, CP-51-CR-0014763-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                     **FILED APRIL 13, 2017**

Appellant, Carlos Rivera, appeals from the November 12, 2015 judgment of sentence imposing two consecutive terms of life imprisonment for two counts of first-degree murder[1] and concurrent sentences for arson[2] and related offenses.  We affirm.

The trial court summarized the pertinent facts:

> On December 31, 2012, [Appellant] lived in the second floor apartment of 6200 Rising Sun Avenue with his girlfriend Atlanta Deveney and her twelve-year-old son Elijah Rosado, both decedents in this case.  At approximately 3:00 p.m. that day, Shaun Harris, Deveney's brother-in-law and downstairs

_____

[1]  18 Pa.C.S.A. § 2502(a).

[2]  18 Pa.C.S.A. § 3301(a)(1).

neighbor, overheard a domestic dispute between [Appellant] and Deveney. Harris saw Rosado descend the stairwell, tending a cut to his hand. Once downstairs, Rosado told Harris that his young friend was still upstairs. Harris rushed upstairs to retrieve the boy and escorted him downstairs to safety. Moments later, Harris returned to the top of the stairs to demand that [Appellant] leave, or else he would call the police. At the top of the stairs, [Appellant] punched Harris in the right eye. As Harris retreated back downstairs, [Appellant] threw a kitchen knife at him, prompting Harris to call the police. Police arrested [Appellant] for simple assault and related charges[.]

While imprisoned awaiting trial for the assault charge, [Appellant] sent Deveney a series of letters urging her to attend the April 5, 2013 preliminary hearing before the Honorable William A. Meehan and testify that Harris instigated the assault. Deveney did not attend the hearing. Afterwards, [Appellant] sent Deveney a letter demanding that she post his bail and warning her that 'what goes around comes back 20 times harder.'

On April 25, 2013, [Appellant] posted bail. On July 17, 2013, [Appellant] rejected the Commonwealth's plea offer and the Honorable Donna M. Woelpper scheduled trial for October 3, 2013.

At or around 4 a.m. on October 3, 2013, [Appellant] visited Deveney and Rosado in their new apartment at 4261 Howell Street. While in the apartment's bathroom, [Appellant] asked Deveney to testify on his behalf later that morning. Deveney told [Appellant] that she previously spoke to the court, would not testify for him, and would not accompany him to court later that morning. Upset, [Appellant] restrained Deveney and tortured her by pricking her neck with a knife eleven times. Moments later, [Appellant] strangled Deveney to death.

[Appellant] entered the adjacent bedroom where Rosado was asleep in the bottom bunk bed. Using a kitchen knife, [Appellant] stabbed Rosado in his left chest five times, breaking the blade of the knife inside him. While [Appellant] stabbed him, Rosado unsuccessfully attempted to shield against [Appellant's] attacks by raising his left arm, suffering additional cuts and slashes. As Rosado lay bleeding on the bed, [Appellant] retrieved a second knife from the kitchen. Armed once again, [Appellant] resumed his assault in the bedroom, and stabbed

- 2 -

Rosado in the neck eight times. After the final thrust, [Appellant] left that knife sticking out of Rosado's neck.

While the two knives remained embedded in Rosado's body, [Appellant] wrapped Rosado in the bunk bed's bloody bedsheets and carried him into the bedroom closet. [Appellant] carried Deveney's body from the bathroom and dumped her atop Rosado inside the closet. [Appellant] blocked the closet with a mattress and fled the scene.

On the morning of October 3, 2013, Appellant failed to appear in court. On that date, Judge Woelpper revoked bail and issued a bench warrant.

At some point before 9 a.m. on October 5, 2013, [Appellant] returned to 4261 Howell Street. [Appellant] removed the apartment's smoke detectors and doused both the mattress blocking the closet and linens in the bathroom with cooking oil. With a lighter, [Appellant] ignited the mattress and the linens. Between 9 a.m. and 10 a.m. that morning, smoke emanating from 4261 Howell Street woke neighbors Walter Pommer and Freddie Rivera. The two individually encountered [Appellant], who requested a fire extinguisher. As the fire began to engulf the apartment, [Appellant] insisted that no one call 911, and told the crowd of neighbors that 'I've got this,' and 'I have it under control.' Upon obtaining a fire extinguisher, [Appellant] briefly reentered the apartment, cursorily sprayed the flames, and absconded.

In response to a 911 call, emergency personnel arrived at the scene. Paramedics treated two neighbors for smoke inhalation and transported both to the hospital. After firefighters brought the fire under control, EMT Kristen Baitzel entered 4621 Howell Street and discovered the decedents' charred remains in the bedroom closet.

[***]

The Philadelphia Fugitive Squad arrested [Appellant] at 8:45 p.m. on October 7, 2013. Between 10 p.m. and 11 p.m. on that date, Detective Brian Peters read [Appellant] his ***Miranda***[3]

_____

3 ***Miranda v. Arizona***, 384 U.S. 436 (1966).

rights and interviewed him. During this conversation, [Appellant] admitted to setting the fire at 4261 Howell Street. At 12:46 a.m. on October 8, Detective Peters gave [Appellant] written *Miranda* warnings and took a written statement, wherein [Appellant] maintained that he did not kill the decedents, that he discovered their bodies on October 3, 2013, and had only set the fire because he did not want anyone else to find them. During the interview, [Appellant] claimed that he had smoked PCP five hours before the interview commenced. Detective Peters testified that [Appellant] was not intoxicated at the time, as he coherently answered questions and lucidly conversed throughout the interview. At 2 a.m., Detective Peters printed the interview and read it to [Appellant], who signed at the end.

At the conclusion of this interview, Detective Peters told [Appellant] that he did not believe that he was being truthful. After over an hour of conversation, [Appellant] indicated that he wanted to tell the truth. At 3:50 a.m., Detective Peters and [Appellant] relocated to the Sergeant's office, where Detective Peters gave [Appellant] his second written *Miranda* warnings. During the second interview, [Appellant] admitted that on October 3, 2013, he strangled Deveney to death and fatally stabled the sleeping Rosado. [Appellant] claimed that he was high on [PCP] during the murder. [Appellant] said that he lit the October 5 fire to draw attention to the decedents' bodies. At the conclusion of the interview, [Appellant] wrote 'I miss them they was [sic] all I Had Peters. [Appellant's signature] Im [sic] Sorry' on the printed copy. At 5:20 a.m., [Appellant] signed a Statement of Adoption Attestation and a Non-Consent to Videotape Statement.

Shanie Rutherford of the Police Detention Unit examined [Appellant] after the interview. Rutherford observed that [Appellant] was coherent and did not exhibit slurred speech or glassy eyes. Rutherford did not smell alcohol on [Appellant].

On September 3, 2015, at a suppression hearing before the Honorable J. Scott O'Keefe, [Appellant] testified that prior to his arrest, he ingested eight Xanax pills, smoked PCP, and drank half a bottle of brandy. [Appellant] further testified that he was intoxicated during each interview, that his statement was coerced, and that Detective Peters failed to read him his Fifth Amendment rights.

Trial Court Opinion, 2/9/2016, at 2-7 (record citations omitted).

At the conclusion of the September 3, 2015 suppression hearing, the trial court denied Appellant's motion to suppress his statement. Appellant proceeded to a bench trial, at the conclusion of which the trial court found him guilty of the aforementioned offenses. The trial court imposed sentence on November 12, 2015, and on December 11, 2015 Appellant filed this timely appeal. He raises one issue: "Did the trial court err by denying Appellant's motion to suppress his two statements?" Appellant's Brief at 3.

We conduct our review mindful of the following:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016). We confine the scope of our review to the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1089 (Pa. 2013).

- 5 -

Appellant argues that his voluntary intoxication, the duration of his interview, and promises of preferential treatment from Detective Peterson rendered his confession involuntary. "The determination of whether a confession is voluntary is a conclusion of law, and as such, is subject to plenary review." *Commonwealth v. Roberts*, 969 A.2d 594, 599 (Pa. Super. 2009). We must consider the totality of the circumstances, including "the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand coercion." *Id.*

The suppression court credited the detective's testimony that he did not engage in any coercive tactics, and that Appellant was coherent and did not appear intoxicated during his interview. Pursuant to our standard of review, we may consider Appellant's evidence only insofar as it is uncontradicted in the suppression record. *Jones*, 121 A.3d at 526. Further, we must accept the suppression court's findings of fact if the record supports them. Instantly, the suppression court was entitled to credit Detective Peters' testimony. The suppression court did not err in finding no factual basis for Appellant's intoxication or his assertions of coercive tactics. Furthermore, as the trial court explains in its opinion, the length of time between a defendant's arrest and confession does not render a confession involuntary absent evidence of an effort to coerce a confession or overcome

the defendants' will.  ***See Commonwealth v. Sepulveda***, 855 A.2d 783, 793 (Pa. 2004), *cert. denied*, 546 U.S. 1169 (2006).

Having reviewed the record, the parties' briefs, the applicable law, and the trial court opinion, we conclude that the trial court's February 9, 2016 opinion accurately addresses Appellant's argument.  We therefore affirm the judgment of sentence based on the trial court's opinion.  We direct that a copy of the trial court's opinion be filed along with this memorandum.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA  :  CP-51-CR-0014762-2013
                                                           :  CP-51-CR-0014763-2013
                                                           :
                          v.                              :
                                                           :
CARLOS RIVERA          Received         :
                                                           :
                            FEB 09 2016          :
                  Office of Judicial Records-Motions
                                          **OPINION**

**McDermott, J.**                                          **February 9, 2016**

**Procedural History**

On December 31, 2012, the Defendant, Carlos Rivera, was arrested and charged with

Simple Assault and related offenses in CP-51-CR-0004597-2013. On October 7, 2013, the

Defendant was arrested and charged with Murder, Arson, and related offenses in CP-51-CR-

0014762-2013, Murder and related offenses in CP-51-CR-0014763-2013, and Robbery and

related offenses in CP-51-CR-0014750-2013. On July 31, 2015, the Commonwealth filed a

Notice of Joinder in the above matters.

On September 3, 2015, after a hearing, the Honorable J. Scott O'Keefe denied the

Defendant's Pre-Trial Motion to Suppress his Statement. On that same date, before this Court,

the Defendant agreed to a bench trial in exchange for the Commonwealth's withdrawal of the

death penalty. Trial commenced on this date and this Court continued the proceeding to

November 9, 2015.

On November 12, 2015, this Court granted a judgment of acquittal for all charges in CP-

51-CR-0014750-2013. On that same date, this Court found the Defendant guilty of First-Degree



Murder (two counts), Arson, Possession of an Instrument of Crime ("PIC") (two counts), Simple Assault, Abuse of a Corpse (two counts), and Reckless Endangerment of Another Person ("REAP") (two counts).[1] This Court immediately sentenced the Defendant in all matters. In CP-51-CR-0014762-2013, this Court imposed the mandatory sentence of life imprisonment without parole for First-Degree Murder, and concurrent sentences of four to eight years for Arson, six to twelve months for PIC, six to twelve months for Abuse of a Corpse, and six to twelve months for REAP. In CP-51-CR-0014763-2013, this Court imposed the mandatory sentence of life imprisonment without parole for First-Degree Murder, and concurrent sentences of six to twelve months for Abuse of a Corpse, and six to twelve months for PIC, with all sentences running consecutively to CP-51-CR-0014762-2013. In CP-51-CR-0004597-2013, this Court imposed concurrent sentences of four to twelve months imprisonment for Simple Assault and four to twelve months for REAP, with all sentences running concurrently to CP-51-CR-0014762-2013, for a total sentence of two consecutive terms of life imprisonment without the possibility of parole.

On December 11, 2015, the Defendant filed a timely Notice of Appeal in the above captioned matters.[2] On December 14, 2015, this Court ordered the Defendant to submit a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On December 30, 2015, the Defendant filed a timely Statement.

**Facts**

On December 31, 2012, the Defendant lived in the second floor apartment of 6200 Rising Sun Avenue with his girlfriend Atlanta Deveney and her twelve-year-old son Elijah Rosado, both decedents in this case. At approximately 3:00 p.m. that day, Shaun Harris, Deveney's brother-

---

[1] This Court found the Defendant not guilty to all other charges.
[2] The Defendant did not file a Notice of Appeal in CP-51-CR-0004597-2013.

in-law and downstairs neighbor, overheard a domestic dispute between the Defendant and Deveney. Harris saw Rosado descend the stairwell, tending a cut to his hand. Once downstairs, Rosado told Harris that his young friend was still upstairs. Harris rushed upstairs to retrieve the boy and escorted him downstairs to safety. Moments later, Harris returned to the top of the stairs to demand that the Defendant leave, or else he would call the police. At the top of the stairs, the Defendant punched Harris in the right eye. As Harris retreated back downstairs, the Defendant threw a kitchen knife at him, prompting Harris to call the police. Police arrested the Defendant for Simple Assault and related charges in CP-51-CR-0004597-2013. N.T. 11/10/2015 at 17–26; 52–58.

While imprisoned awaiting trial for the Assault charge, the Defendant sent Deveney a series of letters urging her to attend the April 5, 2013 preliminary hearing before the Honorable William A. Meehan and testify that Harris instigated the assault. Deveney did not attend the hearing. Afterwards, the Defendant sent Deveney a letter demanding that she post his bail and warning her that "what goes around comes back 20 times harder." N.T. 11/10/2015 at 44–48; Commonwealth Exhibit C-43A; C-43B; C-43C.

On April 25, 2013, the Defendant posted bail. On July 17, 2013, the Defendant rejected the Commonwealth's plea offer and the Honorable Donna M. Woelpper scheduled trial for October 3, 2013.

At or around 4 a.m. on October 3, 2013, the Defendant visited Deveney and Rosado in their new apartment at 4621 Howell Street. While in the apartment's bathroom, the Defendant asked Deveney to testify on his behalf later that morning. Deveney told the Defendant that she previously spoke to the court, would not testify for him, and would not accompany him to court later that morning. Upset, the Defendant restrained Deveney and tortured her by pricking her

3

neck with a knife eleven times. Moments later, the Defendant strangled Deveney to death. N.T. 11/9/2015 at 41; N.T. 11/10/2015 at 76–79; Commonwealth Exhibit C-36.

The Defendant entered the adjacent bedroom where Rosado was asleep in the bottom bunk bed. Using a kitchen knife, the Defendant stabbed Rosado in his left chest five times, breaking the blade of the knife inside him. While the Defendant stabbed him, Rosado unsuccessfully attempted shield against the Defendant's attacks by raising his left arm, suffering additional cuts and slashes. As Rosado lay bleeding on the bed, the Defendant retrieved a second knife from the kitchen. Armed once again, the Defendant resumed his assault in the bedroom, and stabbed Rosado in the neck eight times. After the final thrust, the Defendant left that knife sticking out of Rosado's neck. N.T. 11/9/2015 at 39–42; 121–127; Commonwealth Exhibit C-36.

While the two knives remained embedded in Rosado's body, the Defendant wrapped Rosado in the bunk bed's bloody bedsheets and carried him into the bedroom closet. The Defendant carried Deveney's body from the bathroom and dumped her atop of Rosado inside the closet. The Defendant blocked the closet with a mattress and fled the scene. N.T. 11/9/2015 at 122–126.

On the morning of October 3, 2013, the Defendant failed to appear in court. On that date, Judge Woelpper revoked bail and issued a bench warrant. N.T. 11/10/2015 at 92; Commonwealth Exhibit C-49.

At some point before 9 a.m. on October 5, 2013, the Defendant returned to 4621 Howell Street. The Defendant removed the apartment's smoke detectors and doused both the mattress blocking the closet and linens in the bathroom with cooking oil. With a lighter, the Defendant ignited the mattress and the linens. N.T. 11/9/2015 at 40–42, 121–127, N.T. 11/10/2015 at 7–15.

4

Between 9 a.m. and 10 a.m. that morning, smoke emanating from 4621 Howell Street woke neighbors Walter Pommer and Freddie Rivera. The two individually encountered the Defendant, who requested a fire extinguisher. As the fire began to engulf the apartment, the Defendant insisted that no one call 911, and told the crowd of neighbors that "I've got this," and "I have it under control." Upon obtaining a fire extinguisher, the Defendant briefly reentered the apartment, cursorily sprayed the flames, and absconded. N.T. 11/9/2015 at 21–30; N.T. 11/10/2015 at 59–67.

In response to a 911 call, emergency personnel arrived at the scene. Paramedics treated two neighbors for smoke inhalation and transported both to the hospital. After firefighters brought the fire under control, EMT Kristen Baitzel entered 4621 Howell Street and discovered the decedents' charred remains in the bedroom closet. N.T. 11/9/2015 at 14–46, 75–80.

At trial, Philadelphia Deputy Chief Medical Examiner Dr. Albert Chu, an expert in forensic pathology, testified that neither decedent exhibited soot in their lungs or airways indicative of smoke inhalation. Examination revealed that both bodies exhibited bloating and skin slippage consistent with decomposition. Dr. Chu determined that each decedent was deceased before the fire was started. Deveney's neck exhibited compression, bruising, and fracture consistent with strangulation. The stab wounds to Rosado's chest caused severe internal bleeding in the left chest cavity and collapse of the left lung. Dr. Chu concluded, to a reasonable degree of medical certainty, that Deveney and Rosado died from strangulation and multiple stab wounds, respectively. The manner of each death was homicide. N.T. 11/10/2015 at 76–91.

The Philadelphia Fugitive Squad arrested the Defendant at 8:45 p.m. on October 7, 2013. Between 10 p.m. and 11 p.m. on that date, Detective Brian Peters read the Defendant his Miranda rights and interviewed him. During this conversation, the Defendant admitted to setting

5

the fire at 4621 Howell Street. At 12:48 a.m. on October 8, Detective Peters gave the Defendant written Miranda warnings and took a written statement, wherein the Defendant maintained that he did not kill the decedents, that he discovered their bodies on October 3, 2013, and had only set the fire because he did not want anyone else to find them. During the interview, the Defendant claimed that he had smoked PCP five hours before the interview commenced. Detective Peters testified that the Defendant was not intoxicated at the time, as he coherently answered questions and lucidly conversed throughout the interview. At 2 a.m., Detective Peters printed the interview and read it to the Defendant, who signed at the end. N.T. 11/9/2015 at 88–111; Commonwealth Exhibit C-35.

At the conclusion of this interview, Detective Peters told the Defendant that he did not believe that he was being truthful. After over an hour of conversation, the Defendant indicated that he wanted to tell the truth. At 3:50 a.m., Detective Peters and the Defendant relocated to the Sergeant's office, where Detective Peters gave the Defendant with his second written Miranda warnings. During this second interview, the Defendant admitted that on October 3, 2013, he strangled Devency to death and fatally stabbed the sleeping Rosado. The Defendant claimed that he was high on Phencyclidine ("PCP") during the murder. The Defendant said that he lit the October 5 fire to draw attention to the decedents' bodies. At the conclusion of the interview, the Defendant wrote "I miss them they was [sic] all I Had Peters. [Defendant's signature] Im [sic] Sorry" on the printed copy. At 5:20 a.m., the Defendant signed a Statement of Adoption Attestation and a Non-Consent to Videotape Statement. N.T. 11/9/2015 at 113–128; Commonwealth Exhibit C-36.

Shanie Rutherford of the Police Detention Unit examined the Defendant after the interview. Rutherford observed that the Defendant was coherent and did not exhibit slurred

speech or glassy eyes. Rutherford did not smell alcohol on the Defendant. N.T. 11/10/2015 at 69–73.

On September 3, 2015, at a suppression hearing before the Honorable J. Scott O'Keefe, the Defendant testified that prior to his arrest, he ingested eight Xanax pills, smoked PCP, and drank half a bottle of brandy. The Defendant further testified that he was intoxicated during each interview, that his statement was coerced, and that Detective Peters failed to read him his Fifth Amendment rights. N.T. Preliminary Hearing 9/3/2015 at 59–62, 64–68, 70.

## Discussion

The Defendant challenges the denial of his motion to suppress his October 8, 2013 police statement, on the grounds that his confession was involuntary. Where a motion to suppress has been filed, the Commonwealth must establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Powell*, 944 A.2d 1096, 1101 (Pa. Super. 2010) (*citing* Pa.R.Crim.P. 323(h)); *Commonwealth v. Iannaccio*, 480 A.2d 966 (Pa. 1984). The standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

Where the Commonwealth prevails before the suppression court, appellate courts may consider only the Commonwealth's evidence and the defendant's non-contradictory evidence in the context of the record as a whole. *Commonwealth v. Smith*, 77 A.3d 562, 568 (Pa. 2013) (*citing Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003)). Appellate courts look to the suppression court's specific findings of facts, and those findings of fact are dependent on the suppression court's credibility determinations. *In Re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). The

7

suppression court has the sole authority to assess the credibility of the witnesses and is entitled to believe all, part, or none of the evidence presented. *Commonwealth v. Simmen*, 58 A.3d. 811, 817 (Pa. Super. 2012) (*citing Commonwealth v. Reese*, 31 A.3d 708, 721–722 (Pa. Super. 2011)) Where the suppression court's factual findings are supported by the record, appellate courts may reverse only if the legal conclusions are erroneous. *Commonwealth v. Johnson*, 107 A.3d 52, 93 (Pa. 2014) (*citing Jones*, 988 A.2d at 654).

"The determination of whether a confession is voluntary is a conclusion of law, and [. . .] is subject to plenary review." *Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002). Statements elicited from a defendant in a custodial interrogation are inadmissible unless the defendant was informed of and voluntarily waived his privilege against self-incrimination. *Commonwealth v. Lyons*, 79 A.3d 1053, 1066 (Pa. 2013) (*citing Miranda v. Arizona*, 384 U.S. 436, 471–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. DeJesus*, 787 A.2d 394, 401 (Pa. 2001), *abrogated on other grounds*). In deciding whether a defendant's confession is involuntary, appellate courts determine "whether the interrogation was so manipulative or coercive that it deprives the defendant of his ability to make a free and unconstrained decision." *Commonwealth v. Philistin*, 53 A.3d 1, 15 (Pa. 2012) (*quoting Templin*, 795 A.2d at 966).

The voluntariness of a defendant's waiver is examined under totality of the circumstances surrounding the interrogation. *Commonwealth v. Harrell*, 65 A.3d 420, 433–434 (Pa. Super. 2013) (*citing Commonwealth v. Jones*, 683 A.2d 1181, 1189 (Pa. 1996)). The Pennsylvania Supreme Court highlights several factors for courts to consider, including, "the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation, and any other factors which may serve to drain one's powers of resistance to suggestion and coercion."

8

*Commonwealth v. Perez*, 845 A.2d 779, 787 (Pa. 2004) (*citing DeJesus* 787 A.2d at 403); *see also Lyons*, 79 A.3d at 1066.

A defendant's intoxication does not automatically invalidate his subsequent incriminating statements. *Commonwealth v. Ventura*, 975 A.2d 1128, 1137 (Pa. Super. 2009) (*citing Commonwealth v. Adams*, 561 A.2d 793, 795 (Pa. Super. 1989)). "The test is whether [the defendant] had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to state it." *Id.* at 1137–1138 (*citing Adams*, 561 A.2d at 795). When evidence of impairment is present, the Commonwealth must establish by a preponderance of the evidence that the defendant had sufficient cognitive awareness to understand the Miranda warnings and voluntarily waive his rights. *Id.* (*citing Commonwealth v. Britcher*, 563 A.2d 502, 507 (Pa. Super. 1989)).

Mere passage of time between a defendant's arrest and confession does not constitute grounds for suppression of the statement. *Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (*citing Perez*, 845 A.2d at 787). Absent evidence of coercive tactics or an aim to overcome the defendant's will, a delay in interviewing a defendant will not render a confession involuntary. *See Commonwealth v. Sepulveda*, 855 A.2d 783, 793 (Pa. 2004) (appellant voluntarily confessed to double homicide more than six hours after his arrest).

At the conclusion of the September 3, 2015 suppression hearing, Judge O'Keefe denied the Defendant's motion, determining that the Defendant's statement was knowingly, intelligently, and voluntarily made. N.T. Suppression Hearing 9/3/2015 at 95. This Court sees no reason to disturb Judge O'Keefe's holding. At the suppression hearing, the Defendant argued that his voluntary intoxication, the passage of time between arrest and interrogation, and detective's promise of preferential sentencing rendered his confession to a double homicide

9

involuntary. The Defendant testified that he ingested PCP, Xanax (eight pills), and half a bottle of brandy prior to his arrest. *Id.* at 60–62. The record indicates that the Defendant gave his first written statement at 12:48 a.m. on October 8, 2013, four hours after his arrest, and gave his second statement at 3:50 a.m., seven hours after his arrest. *Id.* at 33, 38–40. The Defendant further testified that Detective Peters discussed the possibility of capital punishment and promised leniency in exchange for truthful testimony. *Id.* at 69–70, 83.

Although the Defendant informed Detective Peters that he had smoked PCP prior to the interrogation, Detective Peters testified that the Defendant appeared sober during each interview. N.T. Suppression Hearing 9/3/2015 at 23, 30, 45. Detective Peters further testified that the Defendant appeared to understand the *Miranda* warnings and gave lucid responses throughout the course of each interview which indicated his cognitive awareness. *Id.* at 23, 29–30. During the suppression hearing, the parties stipulated that on October 8, 2013 at 7:09 p.m., Rutherford performed the Defendant's medical checklist and indicated that the Defendant did not appear to be under the influence of alcohol or drugs and did not demonstrate any visible symptoms of withdrawal. *Id.* at 56–57.

The circumstances surrounding the Defendant's interrogation, viewed in their totality, plainly demonstrate the voluntariness of his confession. Detective Peters began interviewing the Defendant between 10 p.m. and 11 p.m. on October 7, 2013, no more than two hours and fifteen minutes after the Defendant's arrest. *Id.* at 11. Detective Peters gave the Defendant *Miranda* warnings three times, including two written *Miranda* warnings administered immediately prior to each written statement at 12:48 a.m. and 3:50 a.m., respectively. The Defendant read and initialed each written warning, gave answers that indicated his understanding of his rights, and signed an adoption of attestation. *Id.* at 15–18, 27–28; Commonwealth Exhibits 35 and 36.

Nothing in the record indicates undue delay in interviewing the Defendant, let alone that Detective Peters aimed to coerce or overcome the Defendant's will in either delaying the interview or recording multiple statements.

At the suppression hearing, the Defendant testified that Detective Peters told the Defendant that he was eligible for capital punishment and offered to help the Defendant get ten to twenty years imprisonment for the murders. *Id.* at 66, 70, 83. Detective Peters denied making these statements. *Id.* at 11–12, 18, 43–44, 53. At the suppression hearing, Judge O'Keefe determined that Detective Peters' testimony was more credible than the Defendant's. Since Judge O'Keefe's credibility determination is supported by the record, the appellate court may not consider the Defendant's contradictory testimony. *See Smith*, 77 A.3d at 568; *Commonwealth v. Nester*, 709 A.2d 879, 881 n. 2 (Pa. 1998).

The Defendant knowingly, intelligently, and voluntarily waived his right to remain silent. Nothing about the Defendant's physical or psychological state, the duration or means of the interrogation, or the conduct of Detective Peters during the interrogation indicates that the Defendant's statement was a product of coercion. *See Perez*, 845 A.2d at 789.

For the foregoing reasons, the judgment of sentence should be affirmed.

BY THE COURT,

_____
Barbara A. McDermott, J.

11